BEN F. LOEB, JR. v. ANNE N. LOEB

No. 8315DC1177

(Filed 2 January 1985)

1. **Divorce and Alimony § 21.9— equitable distribution—presumption of marital property—standard of proof to rebut presumption**

The Equitable Distribution Act creates a presumption that all property acquired by the parties during the course of the marriage is "marital property," and the standard of proof required to rebut that presumption is the clear, cogent, and convincing evidence standard required to rebut the presumption of gift between spouses in cases involving title to real property before the Act. G.S. 50-20 (Supp. 1983).

2. **Divorce and Alimony § 21.9— equitable distribution—jointly held property— presumption of gift to marital estate not rebutted**

In an action for divorce and equitable distribution, the wife did not meet her burden of proof in contending that jointly held tracts conveyed to the parties as tenants by the entirety as a gift by the wife's mother were intended to be a gift to the wife alone rather than to the marital estate. G.S. 50-20(b)(1), G.S. 50-20(b)(2).

3. **Divorce and Alimony § 21.9— equitable distribution—cash gifts from wife's mother—marital property**

In an action for divorce and equitable distribution, the court did not err by finding that cash gifts from the wife's mother were deposited in joint savings and checking accounts and combined with the other income of the family where the wife was unable to state the value of the gifts and the gifts could not be traced in the joint accounts. The wife did not provide the necessary proof to rebut the marital property assumption. G.S. 50-20(b)(2) (Supp. 1981).

4. **Divorce and Alimony § 21.9— equitable distribution—purchases from joint accounts—findings sufficient**

In an action for divorce and equitable distribution, the court did not err in finding that a condominium, certificates of deposit, and money market certificates were purchased with funds from joint bank accounts. A finding concerning the source of funds was not needed since the joint bank accounts were marital property.

5. **Divorce and Alimony § 21.9— equitable distribution—condominium in wife's name—purchased with marital property**

In an action for divorce and equitable distribution, the court did not err in finding that a condominium purchased in the wife's name had been purchased with marital property where it was purchased with funds from joint savings, stocks and bonds in the wife's name only purchased with funds from joint accounts, and $2,000 from a gift to the wife by her mother after the parties separated. The wife did not meet her burden of rebutting the presumption that all property acquired by either spouse during the marriage is marital property. G.S. 50-20(b)(2) (Supp. 1981).

Loeb v. Loeb

**6. Divorce and Alimony § 21.9 — equitable distribution — equal division of property — no error**

In an action for divorce and equitable distribution, the court did not err by dividing the marital property equally according to value even though the parties' income was significantly disproportionate where a condominium had been purchased as a new home for the children, there was no evidence that the wife needed to occupy or own the marital residence, the wife had separate property in the form of stocks, real estate, and a *vested* interest in a large family trust, and the husband's only separate property was his retirement benefit. G.S. 50-20(c) (Supp. 1981).

**7. Divorce and Alimony § 21.9 — equitable distribution of property — findings required**

In an action for divorce and equitable distribution, the court did not err by not specifically finding the *marital property* of the parties where its finding as to the property acquired and owned by the parties tracked the language of the statutory definition of marital property. Findings and conclusions as to the statutory and non-statutory factors for determining the division of marital property are necessary only to justify an unequal equitable distribution. G.S. 50-20(b)(1) (Supp. 1981).

**8. Appeal and Error § 42.2 — supporting evidence not in record — assignments of error deemed abandoned**

In an action for divorce and equitable distribution, assignments of error concerning the admission of the husband's real estate appraiser's report and the husband's summaries of checks were deemed abandoned where neither exhibit was included in the record on appeal.

**9. Rules of Civil Procedure § 59 — motion for new trial — properly denied**

In an action for divorce and equitable distribution, defendant's Rule 59 motion for a new trial based on allegations that plaintiff had falsely answered an interrogatory about whether he had consulted an expert and had reneged on an oral stipulation concerning the admission of the wife's property appraisal, was properly denied where defendant did not object, claim surprise, or seek a continuance when the husband's expert was tendered to the court, where plaintiff's attorney filed an affidavit denying the existence of the stipulation, and where there was no evidence that the wife's appraisal was offered into evidence. G.S. 1A-1, Rule 59.

APPEAL by defendant from *Hunt, Judge.* Orders entered 3 June 1983 and 27 July 1983 in District Court, ORANGE County. Heard in the Court of Appeals 29 August 1984.

*Susan H. Lewis and George W. Miller, Jr., for plaintiff appellee.*

*Hunter, Wharton & Howell, by John V. Hunter, III, for defendant appellant.*

BECTON, Judge.

This case deals with the inclusion of property acquired by gift from a third party in an equitable distribution of marital property.

The parties were married in 1961 and lived together until their separation in March 1981. During the course of their marriage, the plaintiff husband, Ben F. Loeb, Jr., worked as an attorney, first with a private law firm in Tennessee, then with the State of North Carolina. From 1964 until 1981, the defendant wife, Anne N. Loeb, generally did not work outside the home. The parties have two children.

The husband contributed his entire income to the support of the family and the accumulation of the parties' savings and assets. The parties handled their finances exclusively through *joint* savings and *joint* checking accounts. Over the years the wife's mother, Mrs. Nelson, gave the parties joint title to several tracts of real property in Tennessee as tenants by the entirety, and cash gifts individually that were deposited in their joint savings and joint checking accounts.

During their marriage, the parties acquired the following: (1) joint title to a 196-acre farm in Tennessee (by deed from Mrs. Nelson); (2) joint title to a 36-acre farm in Tennessee (by deed from Mrs. Nelson); (3) joint title to an interest in a lot and building in Paris, Tennessee (by deed from Mrs. Nelson); (4) joint title to a residential lot in Chapel Hill (purchased with funds from their joint checking and savings accounts); (5) title in the wife's name alone to a condominium in Chapel Hill (purchased for cash, consisting of the proceeds from (a) a signature note in the wife's name, (b) a money market certificate in the wife's name, which was purchased with funds from a joint account, (c) stocks and bonds in the wife's name (purchased with the proceeds from stock originally held jointly or in the husband's name); (6) AT&T stock held in the wife's name (purchased with funds from the parties' joint checking account); (7) Commercial Bank Stock held in the wife's name (purchased with funds from the parties' joint checking account); (8) certificates of deposit at Orange Savings and Loan in both parties' names (purchased with funds from the parties' joint savings and checking accounts); (9) a certificate of deposit at Home Federal Savings and Loan in both parties' names

(purchased with funds from the parties' joint savings and checking accounts); (10) a money market certificate at NCNB in the husband's name (purchased with funds from the parties' joint savings and checking accounts); (11) a house and lot in Chapel Hill (purchased with proceeds from the sale of the parties' first marital home in Chapel Hill, which, in turn, had been purchased with funds from joint savings and checking accounts); (12) a voluntary retirement account in the husband's name alone; (13) title in the wife's name alone to a 96-acre farm in Tennessee (by deed from her parents); (14) the husband's North Carolina State Employees' Retirement Account. The trial court made specific findings on the monetary value of each item listed above; these are included in the record on appeal.

On 30 September 1982 the husband instituted an action for absolute divorce from the wife and asked for an equitable distribution of the marital property. The Equitable Distribution Act (the Act), as codified at N.C. Gen. Stat. Sec. 50-20, applies to all actions for absolute divorce instituted on or after 1 October 1981. G.S. Sec. 50-20 (Supp. 1983). The absolute divorce was granted on 13 December 1982. The equitable distribution issue was tried in April 1983; the Order dividing the parties' marital property was entered on 3 June 1983. The trial court found that (1) items 1-12 were marital property; (2) item 13 was the wife's separate property; and (3) item 14 was the husband's separate property. It then distributed the marital property equally between the parties according to value, awarding the wife items 1-3 and 5-7, and awarding the husband items 4 and 8-12. Because of a slight discrepancy in the value of their respective property, the trial court ordered the husband to make a distributive award to the wife in the amount of $4,577 "to render an equal and equitable distribution."

After the trial, but before the entry of the Order, the wife filed a motion for a new trial or for leave to reopen the evidence. The motion was denied on 14 July 1983. The wife appeals from the 3 June 1983 Order and the 14 July 1983 denial of her motion.

I

Under the Act, the trial judge, before equitably dividing the parties' property, must distinguish between "marital property," as defined in G.S. Sec. 50-20(b)(1) and "separate property," as

defined in G.S. Sec. 50-20(b)(2). *See Alexander v. Alexander,* 68 N.C. App. 548, 315 S.E. 2d 772 (1984). "Separate property" is not subject to equitable distribution. G.S. Sec. 50-20(c); S. Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis,* 61 N.C.L. Rev. 247, 249 (1983). The wife assigns error to the trial court's classification of the Tennessee tracts of land given to the parties jointly by the wife's mother during the course of the marriage as "marital property." We find no error.

Under the original version of G.S. Sec. 50-20(b)(1), which was in effect at the time the husband filed for absolute divorce, "marital property" was defined as "all real and personal property acquired by either spouse during the course of the marriage and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section." G.S. Sec. 50-20(b)(1) (Supp. 1981). "Separate property," in pertinent part, included "all real and personal property acquired by a spouse . . . by bequest, devise, descent, or gift during the course of the marriage." G.S. Sec. 50-20(b)(2) (Supp. 1981).

In construing the provisions of a statute, we find the legislative intent controlling. *Jolly v. Wright,* 300 N.C. 83, 265 S.E. 2d 135 (1980). The language of the statute itself and the purpose behind the legislation supply the strongest indicia of the legislative intent. *State ex rel. Utilities Comm'n v. Public Staff,* 309 N.C. 195, 306 S.E. 2d 435 (1983); *In re Kirkman,* 302 N.C. 164, 273 S.E. 2d 712 (1981). The introductory provision of the Act reveals its equitable purpose: "Upon application of a party, the court shall determine what is the marital property and shall provide for an equitable distribution of the marital property between the parties . . . ." G.S. Sec. 50-20(a) (Supp. 1981). The Act reflects a trend nationwide towards recognizing marriage as "a partnership, a shared enterprise to which both spouses make valuable contributions, albeit often in different ways." Sharp, *supra,* at 247.

[1]  Guided by the legislative intent, we hold that the language of the Act, both in the original version and as amended, *see* G.S. Sec. 50-20 (Supp. 1983), creates a presumption that all property acquired by the parties during the course of the marriage is "marital property." *Accord Painter v. Painter,* 65 N.J. 196, 320 A. 2d 484 (1974) (similar statutory language); *see* Sharp, *supra,* at 250

& n. 16-17. Absent a statutorily-mandated standard of proof, we adopt the standard of proof required to rebut a presumption of gift between spouses in cases involving title to real property arising prior to the effective date of the Act. *See Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982). The "marital property" presumption may, therefore, be rebutted by clear, cogent, and convincing evidence that the property comes within the "separate property" definition. *See id.* The burden of proof necessarily falls on the party claiming the "separate property."

[2]  In the case before us, the wife contends that the jointly held Tennessee tracts are her "separate property." The first question is whether jointly held property qualifies as "marital property." The 1981 version of the "marital property" definition reads, in pertinent part, "all real and personal property acquired by either spouse. . . ." G.S. 50-20(b)(1). We find that jointly held property should be read into the 1981 "marital property" definition, especially in light of G.S. Sec. 50-20(b)(2) (Supp. 1981), which specifies that "separate property" remains separate "regardless of whether the title is in the name of the husband or wife *or both*." (Emphasis added.) *Accord Grant v. Grant*, 424 A. 2d 139 (Me. 1981) (interpreting similarly worded "marital property" definition); *see* Sharp, *supra*, at 252 & n. 30 (majority rule among common-law states). The General Assembly has subsequently clarified its legislative intent by amending the "marital property" definition to include "all real and personal property acquired by either spouse or *both spouses*. . . ." G.S. Sec. 50-20(b)(1) (Supp. 1983). (Emphasis added.) Thus, the parties' jointly held Tennessee tracts were presumed to be "marital property."

To rebut the presumption, the wife had the burden of proving by clear, cogent, and convincing evidence that the tracts came within the "separate property" definition. "Separate property" is defined, in significant part, as "all real and personal property . . . acquired by *a* spouse by . . . gift during the course of the marriage." G.S. Sec. 50-20(b)(2) (Supp. 1981). (Emphasis added.) The General Assembly's choice of the singular term, "a," is crucial. We discern that the legislature intended to exclude from the definition of "separate property" a gift of property to both parties from a third party during the course of the marriage. *Accord Ackley v. Ackley*, 100 A.D. 2d 153, 472 N.Y.S. 2d 804 (N.Y. App. Div. 1984) (same outcome—"gift from a party other than *the*

spouse"); *In re Marriage of Wendt*, 339 N.W. 2d 615 (Iowa Ct. App. 1983) (same outcome — "gifts received by either party"). Our holding reflects the partnership concept of marriage inherent in the equitable distribution statute, as discussed by the *Ackley* Court:

> In construing the language of the equitable distribution statute, we must consider its basic premise that marriage is an economic partnership (see *Forcucci v. Forcucci*, 83 A.D. 2d 169, 171, 443 N.Y.S. 2d 1013). '[T]he partnership concept of marriage is enhanced by a recognition that property acquired jointly by the spouses during marriage by gift, bequest, devise or descent is a part of the marital estate' (*Grant v. Grant*, [Me.], 424 A. 2d 139, 144). A gift of property to both spouses comes to them by reason of the marital relation (*Forsythe v. Forsythe*, [Mo. App.], 558 S.W. 2d 675, 678) and should be considered as property belonging to the marital partnership. Thus, wedding gifts as well as other gifts made to both spouses have been held to be marital property. [Citations omitted.]

100 A.D. 2d at 155-6, 472 N.Y.S. 2d at 806.

Under common-law, a deed conveying real estate to a husband and wife creates an estate by the entireties. *Freeze v. Congleton*, 276 N.C. 178, 171 S.E. 2d 424 (1970). However, title is not absolutely controlling under the Act, as is clear from the "separate property" definition, G.S. Sec. 50-20(b)(2) (1981). Joint title merely creates the rebuttable presumption of "marital property," which may be overcome by clear, cogent, and convincing evidence of the third party donor's contrary intent. *Forsythe v. Forsythe*, 558 S.W. 2d 675 (Mo. Ct. App. 1977); *Ackley v. Ackley; Grant v. Grant* (concurring opinion); *see* Sharp, *supra*, at 263 & n. 100. Thus, evidence that the gift of property was intended for only one spouse could conceivably rebut the presumption. Admittedly, the likelihood of overcoming the presumption is small. *See* Sharp, *supra*.

However, in this case, the wife has totally failed to meet her burden of proof. Only the wife testified; and her testimony tends to buttress her mother's intent to make a gift to the marital estate. While discussing one tract of land the wife stated: "Mother had given us her share of the lot at that time." There is

no evidence in the record of her mother's intent to make a gift to her daughter alone. The wife's mother conveyed the Tennessee tracts to the parties as tenants by the entirety. Without evidence of the donor's differing intent to rebut the "marital property" presumption, we conclude that the trial court did not err in classifying the jointly held land as "marital property."

## II

[3]   The wife argues that the trial court's finding that "gifts from the wife's mother were placed in joint [savings and checking] accounts and *combined* with other income of the family including the [husband's] salary . . . is not supported by competent, material and relevant evidence." (Emphasis added.) We disagree. The trial court's finding reflects the wife's failure to meet her burden of proof.

The wife relies on G.S. Sec. 50-20(b)(2) (Supp. 1981), which reads, in pertinent part, as follows: "Property acquired in exchange for separate property shall be considered separate property regardless of whether the title is in the name of the husband or wife or both." There is no doubt that the wife's cash gifts from her mother might have qualified initially as "separate property" under G.S. Sec. 50-20(b)(2) (Supp. 1981), given sufficient evidence. Moreover, it is true that the wife's mere act of depositing her cash gifts from her mother in the parties' joint bank account would not have deprived them of their "separate property" status under G.S. Sec. 50-20(b)(2) (Supp. 1981), if she had been able to trace the proceeds. The General Assembly clearly intended "separate property" to remain so, no matter the title. *See id.* However, the wife had the burden of proving not only the act of giving, but also the monetary value of the gift. Absent proof of the value, a cash gift from a third party can not initially qualify as "separate property" and be traced into a joint bank account.

Here the wife was unable to state the value of her alleged "separate property": "As to approximately how much money my mother gave me and Mr. Loeb during the marriage, that was something I didn't total up in any specific manner . . . . I just don't have that figure." There is no evidence of the amount of the wife's cash gifts deposited in the parties' joint bank accounts. The wife has, therefore, failed to rebut the "marital property"

presumption. In essence, the wife's cash gifts were combined with the family's other income in the joint accounts.

In terms of the proof required the Act is consistent with prior North Carolina law. In *Smith v. Smith*, 255 N.C. 152, 120 S.E. 2d 575 (1961), the Court established a rebuttable presumption that the funds in a joint bank account to the credit of a husband and wife were held jointly, with each party entitled to one-half of the proceeds. The husband rebutted the simple presumption of a joint tenancy with proof that he was the sole source of all the funds in the joint account. Under those circumstances, the wife was held to be the husband's agent rather than the co-owner of the funds. Here the wife has not provided the necessary proof to rebut the "marital property" presumption.

We find no error in the trial court's finding.

### III

[4]    The trial court found that (1) the condominium in Chapel Hill, (2) the certificates of deposit at Orange Savings & Loan, (3) the certificate of deposit at Home Federal Savings & Loan, and (4) the money market certificate at North Carolina National Bank were purchased with funds from the parties' joint bank accounts. The wife contends that there is no competent evidence to support the trial court's finding. After reviewing the record, we summarily affirm. The wife also contends that the trial court "impermissibly failed to find the source and nature of the funds." The trial court found that items 1-4 listed above were "marital property," to the extent they were purchased with funds from the parties' joint bank accounts. Since the funds in the joint bank account were "marital property," for the reasons discussed in II, *supra*, the trial court's findings were adequate.

### IV

[5]    The trial court classified the Chapel Hill condominium as "marital property," after finding that it had been

> purchased by the [wife] in her name with funds of the joint savings of the parties . . .; stocks and bonds purchased by the parties from funds of savings and checking accounts held by the parties jointly . . . and $2,000 from a gift to the [wife] from her mother after separation of the parties.

The wife argues that there is "no competent, relevant and material evidence that it was purchased with marital property." We disagree.

In addition to restating the argument addressed in II, *supra,* the wife emphasizes that the stocks and bonds liquidated were in her name alone. She concedes that "to some extent, they were in her name because the husband insisted that they be." The wife does not contest the fact that the stocks and bonds were purchased with funds from the joint accounts.

Having concluded in II, *supra,* that funds from the joint accounts were "marital property," we must determine whether the subsequent issuance of the stocks and bonds in the wife's name alone changes the character of the asset. Considering that the funds in the accounts were marital property, a purchase of stock in a single spouse's name with funds from the account could be classified as a gift from the other spouse. However, G.S. Sec. 50-20(b)(2) (Supp. 1981) specifies that "property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance." There is no evidence in the record of such an intention.

At this point, we reiterate that there is a rebuttable presumption that all property acquired by either spouse during the course of the marriage is marital property. G.S. Sec. 50-20(b)(1) (Supp. 1981). The party claiming the separate property exception carries the burden of rebutting the presumption. *See* Sharp, *supra,* at 250. The wife has failed to carry her burden. We conclude that the trial court did not err in classifying the condominium as "marital property."

V

[6]  In distributing the parties' marital property, the trial court awarded the husband the family residence and the residential lot in Chapel Hill, his voluntary retirement account, the certificates of deposit at Orange Savings & Loan and Home Federal Savings and the money market certificate at NCNB. The wife was awarded the condominium in Chapel Hill, the three jointly-held tracts of Tennessee land, and various stocks. The husband was also ordered to pay the wife a $4,577 distributive award. The wife

argues that the trial court erred in making the award, since "the husband, the party with real earning power and substantial retirement assets, has been decreed the owner of virtually everything worthwhile which was acquired by the *joint* efforts of the parties during the nineteen years they lived together, and the owner of a large part of the wife's family's gifts." The trial court found that an equitable division of the marital properties was equitable and fair. Each party was awarded marital property with approximately the same monetary value. We are persuaded that the trial court did not err.

G.S. Sec. 50-20(c) (Supp. 1981) provides, in pertinent part: "There shall be an equal division by using net value of marital property unless the [trial] court determines that an equal division is not equitable." Recently, this Court stated that the above language "sets forth a presumption of equal division which requires that the marital property be equally divided between the parties in the usual case and in the absence of some reason(s) compelling a contrary result." *Alexander v. Alexander*, 68 N.C. App. at 552, 315 S.E. 2d at 775. In this case, the trial court decided that the wife's parents' gifts to the parties constituted marital property. Once that determination had been made, it was not inequitable for the trial court to divide the marital property equally according to value absent "some reason(s) compelling a contrary result." *Id.* There is no requirement that the trial judge consider the geographical location of the property as well as its monetary value, in making the distribution.

The wife contends that "some reason(s) compelling a contrary result" exist. *Id.* She asserts that a consideration of the statutory factors and the non-statutory factor listed in G.S. Sec. 50-20(c) (Supp. 1981) dictates a distribution weighted in her favor instead of an equal division. We disagree. The wife emphasizes: (1) the extremely disparate incomes of the parties, G.S. Sec. 50-20(c)(1); (2) her custody of the two children and need for shelter, G.S. Sec. 50-20(c)(4); (3) the husband's "substantial" pension and retirement rights, G.S. Sec. 50-20(c)(5); (4) the "award of virtually all the liquid marital assets to the husband," G.S. Sec. 50-20(c)(9); and (5) the fact that "[m]ore than half of the combined net worth of the parties has been made possible by the generosity of the wife's family," G.S. Sec. 50-20(c)(12).

We summarily dispose of (2), (4) and (5). There is no evidence that the wife has a "need . . . to occupy or own the marital residence. . . ." G.S. Sec. 50-20(c)(4). According to her testimony, the condominium had been purchased as a new home for the children. The trial court did not award the husband "virtually all the liquid marital assets"; the division was approximately equal. We need not address (5) in light of our discussions in I and II, *supra.*

Turning to (1), under G.S. Sec. 50-20(c)(1), the trial court may consider "[t]he income, property, and liabilities of each party . . ." in deciding whether to make an equitable distribution. Clearly, "property" in this instance refers to the parties' "separate property." Although the parties' "separate property" is not itself subject to equitable distribution under G.S. Sec. 50-20, its value may be considered as a balancing factor in the trial court's distribution of the marital property. 1 *Valuation & Distribution of Marital Property* Sec. 19.09 [1] (J. McCahey ed. 1984). It is true that the parties' earned income is significantly disproportionate. The husband earns approximately $50,000; the wife earns $7,000 part-time, while looking for full-time employment as a CPA. However, the trial court found that the wife had "separate property" in the form of stocks, real estate and a *vested* remainder interest in the corpus of a large family trust fund, which is to be distributed upon her mother's death. The dividend-paying stocks and real estate were valued at approximately $37,000. We emphasize that the non-speculative quality of the wife's rights to the trust fund distinguishes this from the vast majority of cases. The principal is to remain untouched until its distribution at the wife's mother's death. Moreover, the wife's interest is *vested. Compare Krause v. Krause,* 174 Conn. 361, 387 A. 2d 548 (1978) (evidence of the "potential inheritance" of a spouse is inadmissible, when the expectancy is, at most, speculative). Therefore, the trial court could properly consider the trust fund as "separate property."

The husband's retirement benefits were his only separate property. Under G.S. Sec. 50-20(c)(5) (Supp. 1981) the trial court may consider "[v]ested pension or retirement rights and the expectation of nonvested pension or retirement rights, which are separate property." The husband alone had such "retirement rights," presently valued at $32,000.

After reviewing the evidence in the context of the factors listed above, we are persuaded that the trial court correctly ordered an equal division of the marital property.

## VI

[7]   As stated in I, *supra*, the trial court, in an equitable distribution case, must first decide and make findings of fact on what "property acquired by either spouse during the course of their marriage and presently owned . . ." constitutes "marital property." G.S. Sec. 50-20(b)(1) (Supp. 1981); *Alexander v. Alexander.* The wife assigns error to the trial court's failure to find the *marital property* of the parties. This assignment of error is without merit.

In Finding of Fact No. 11 the trial court stated: "The following properties were acquired by the parties and are presently owned by them. . . ." It then listed twelve assets acquired by the parties during their marriage. Finding of Fact No. 12 begins: "The following is a list of separate property owned by the parties at the present time. . . ." Although Finding of Fact No. 11 does not include the words "marital property," it tracks the language of G.S. Sec. 50-20(b)(1) (Supp. 1981), the definition of "marital property." We conclude that the trial court's finding on the parties' marital property is adequate.

## VII

The trial court simply found: "An equal distribution of marital property will be equitable and fair," before distributing the parties' marital property. The wife contends that the trial court erred "in failing to make appropriate findings and conclusions as to the statutory factors for determining the division of marital property." We hold that the trial court need only make findings of fact on the statutory and nonstatutory factors to support its conclusion that an equal division is inequitable. *See Alexander v. Alexander* (dicta). G.S. Sec. 50-20(c) (Supp. 1981) establishes a presumption that an equal division is equitable. Only when the presumption is rebutted by "reason(s) compelling a contrary result" are findings of fact on the statutory and nonstatutory factors necessary to justify the unequal equitable distribution. *Alexander v. Alexander,* --- N.C. App. at ---, 315 S.E. 2d at 775.

## VIII

[8] The wife assigns error to the admission of the husband's real estate appraiser's report and the husband's summaries of checks. Neither exhibit has been included in the record on appeal. Without the exhibits before us, we are unable to determine whether the wife has been prejudiced by their admission. *Medford v. Davis*, 62 N.C. App. 308, 302 S.E. 2d 838, *disc. rev. denied*, 309 N.C. 461, 307 S.E. 2d 365 (1983); *Hasty v. Turner*, 53 N.C. App. 746, 281 S.E. 2d 728 (1981). We emphasize that the appellant has the responsibility of properly preparing the record on appeal. *Tucker v. Gen'l Tel. Co.*, 50 N.C. App. 112, 272 S.E. 2d 911 (1980). These assignments of error are deemed abandoned.

## IX

[9] After the trial the wife made a motion for a new trial or the opportunity to present additional evidence under Rule 59 of the North Carolina Rules of Civil Procedure. In her motion, she did not specify the particular grounds under Rule 59. She assigns error to the trial court's denial of her motion, arguing that the husband's allegedly false interrogatory answer to a question on expert witnesses and his allegedly false testimony on financial records severely prejudiced her. A trial court's ruling on a motion for a new trial is not reviewable on appeal absent a manifest abuse of discretion. *Mumford v. Hutton & Bourbonnais Co.*, 47 N.C. App. 440, 267 S.E. 2d 511 (1980). We do not discern an abuse of discretion.

When the husband's expert was tendered to the court, the wife's attorney made no objection, claimed no surprise, and sought no continuance. Whether the husband had already consulted an expert witness at the time he denied doing so in his interrogatory answer is immaterial under these circumstances, since the wife has failed to show any resulting prejudice. When a party claims prejudice on appeal, she must demonstrate how she was prejudiced. *Medford v. Davis; Hasty v. Turner*.

From the wife's motion, we determine that the true issue before the trial court on the motion was not the husband's false interrogatory answer, but rather, the wife's inability to admit her own appraisal of the Tennessee property in evidence, pursuant to an alleged oral stipulation. In her motion the wife states that the

husband's attorney reneged on the oral agreement at trial. The husband's attorney, in an affidavit submitted on the motion, denied the existence of an oral stipulation. Given the opposing counsel's denial, the oral stipulation cannot be proved. *Lindsey v. Supreme Lodge of Knights of Honor,* 172 N.C. 818, 90 S.E. 1013 (1916). It is advised that counsel evidence their stipulations by a signed writing to avoid this result. *Amick v. Shipley,* 43 N.C. App. 507, 259 S.E. 2d 329 (1979).

To determine whether evidence has been improperly excluded, the record must show the evidence was offered, an objection was sustained, and the purport of the evidence excluded. 1 H. Brandis, *North Carolina Evidence* Sec. 26 (2d rev. ed. 1982). Here, there is no evidence in the record that the wife's appraisal was even offered in evidence. The wife has failed to show any prejudice entitling her to relief under Rule 59. *Medford v. Davis.*

The wife's second grounds for her motion, the husband's allegedly false testimony on financial records, is not supported by the record.

We find that the trial court did not abuse its discretion in denying the wife's Rule 59 motion.

X

In summary, the trial court did not err in classifying jointly-held real property received from a third party and assets purchased with funds from joint bank accounts as "marital property." Further, the trial court did not err in applying the equal division presumption to award each party one-half of the marital property. Finally, the trial court did not abuse its discretion in denying the wife's motion for a new trial or to present additional evidence.

Affirmed.

Judges HILL and BRASWELL concur.