CAROL HAYNES McLEAN (FISK) v. RUSSELL L. McLEAN, III

No. 55A88

(Filed 8 December 1988)

1. **Divorce and Alimony § 30— equitable distribution—marital property—separate funds contributed—presumption of gift**

   A defendant in an equitable distribution action is presumed to have intended a gift to the marital estate of separate funds used in the purchase of a house and lot where the conveyance contained no express statement of separate property intention and the conveyance itself, by titling the property by the entireties, indicated the "contrary intention" to preserving separate property required by the statute. When a spouse uses separate property in the acquisition of property titled by the entireties, a gift to the marital estate is presumed and this presumption is rebutted only by clear, cogent and convincing evidence that a gift was not intended. N.C.G.S. § 50-20(b)(2) (1987).

2. **Divorce and Alimony § 30— equitable distribution—valuation of law practice**

   The trial court did not abuse its discretion in an equitable distribution action by determining that a C.P.A.'s testimony would be helpful in valuing a law practice even though the C.P.A. was admittedly unfamiliar with the subject area of sale of law practices in the Asheville area. The C.P.A.'s training and experience gave him knowledge sufficient to render him better qualified than the trier of fact to value an interest in a law practice. The factors set out in *Poore v. Poore*, 75 N.C. App. 414, for valuing a professional practice are not criteria for the admissibility of evidence, but they should enter into the weighing of the evidence presented regarding valuation, as reflected by the findings of fact. Moreover, the judgment here reflects no consideration of goodwill, which should be valued on remand, and the factors listed in *Poore* as relevant are helpful, though not exclusive or absolute.

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 88 N.C. App. 285, 363 S.E. 2d 95 (1987), vacating an equitable distribution judgment entered by *Fowler, J.,* on 13 November 1986 in District Court, BUNCOMBE County, and remanding for a new determination of the value of defendant's law practice and classification and

distribution of the parties' property. On 6 April 1988 we allowed defendant's petition for discretionary review of an issue not raised by the dissenting opinion regarding the valuation of his law practice. Heard in the Supreme Court 14 September 1988.

*Riddle, Kelly & Cagle, P.A., by Robert E. Riddle, for plaintiff-appellee.*

*Long, Parker, Hunt, Payne & Warren, P.A., by Robert B. Long, Jr. and William A. Parker, for defendant-appellant.*

WHICHARD, Justice.

Plaintiff and defendant were married in 1966, separated in 1984, and divorced in 1985. The issues on appeal relate only to equitable distribution.

The parties owned, among other assets, a house and lot on Camp Branch Road in Haywood County, bought during the marriage and held as tenants by the entirety. The lot was purchased, and the house built, with the following funds: (1) $39,662.38 from the sale proceeds of another house held as tenants by the entirety; (2) a $55,000 loan; (3) construction services rendered in exchange for defendant's legal services; and (4) $75,311.17 paid from defendant's separate funds inherited from his father's estate. The trial court classified this property as marital, and the Court of Appeals affirmed. Judge Greene dissented "from the majority's holding that defendant's use of his separate property to acquire the Camp Branch [Road] property and buildings 'by the entirety' is presumed to be a 'gift' to the marital estate." *McLean v. McLean*, 88 N.C. App. 285, 293, 363 S.E. 2d 95, 101 (1987) (Greene, J., dissenting). Therefore, the only question before us on defendant's appeal of right is whether the Camp Branch Road property properly was classified as marital. N.C.R. App. P. 16(b). Defendant argues that the inherited funds invested in the marital home remained his separate property, and that the Camp Branch Road property thus should be deemed to comprise both marital and separate property elements.

Defendant, a practicing attorney, also owned stock in a professional association engaged in the practice of law. An expert witness valued this interest at $61,910. The trial court classified the interest as marital property and valued it at $35,000. The Court of Appeals vacated the findings with respect to valuation of

defendant's law practice and remanded for a new determination of value. However, it unanimously found no error in the admission of the expert testimony regarding the value of this interest. We allowed discretionary review of this additional issue.

## I. TENANCY BY THE ENTIRETY AND THE MARITAL GIFT PRESUMPTION

[1] The initial step in any equitable distribution action is classification by the trial court of all property owned by the parties as marital or separate, as defined by the statute. N.C.G.S. § 50-20(a) (1987); *Cornelius v. Cornelius*, 87 N.C. App. 269, 271, 360 S.E. 2d 703, 704 (1987); *Mauser v. Mauser*, 75 N.C. App. 115, 117, 330 S.E. 2d 63, 65 (1985). Marital property includes "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties," but does not include property determined to be separate property under N.C.G.S. § 50-20(b)(2). N.C.G.S. § 50-20(b)(1) (1987). Separate property includes

> all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance.

N.C.G.S. § 50-20(b)(2) (1987).

Following classification, property classified as marital is distributed by the trial court, while separate property remains unaffected. *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E. 2d 228, 232 (1987).

As here, a single asset may be acquired by contributions from both separate and marital property. The Court of Appeals has adopted a "source of funds" approach to distinguish between marital and separate contributions in such cases. *Wade v. Wade*,

72 N.C. App. 372, 381-82, 325 S.E. 2d 260, 269, *disc. rev. denied,* 313 N.C. 612, 330 S.E. 2d 616 (1985). Under this approach, "when both the marital and separate estates contribute assets towards the acquisition of property, each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property." *Id.* at 382, 325 S.E. 2d at 269.

The source of funds rule "would dictate that each party retain as separate property the amount he or she contributed to the down payment, plus the increase on that investment due to passive appreciation." *McLeod v. McLeod,* 74 N.C. App. 144, 154, 327 S.E. 2d 910, 916, *cert. denied,* 314 N.C. 331, 333 S.E. 2d 488 (1985). However, our Court of Appeals has declined to apply this rule when a spouse uses separate funds to furnish consideration for property conveyed to the marital estate, as demonstrated by titling the property as a tenancy by the entirety. In such cases a presumption of a gift of separate property to the marital estate arises, which is rebuttable by clear, cogent, and convincing evidence. *Id.* at 154, 327 S.E. 2d at 916-17.

In upholding the trial court's classification of the Camp Branch Road house and lot as marital property, the majority in the Court of Appeals relied on *McLeod.* Judge Greene, however, dissented. The third sentence of N.C.G.S. § 50-20(b)(2) provides: "Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance." The dissenting opinion focused on this sentence and stated: "To hold that titling property by the entirety *itself* constitutes the necessary express intent [that the property be considered marital] renders the statutory provision a *non sequitur." McLean,* 88 N.C. App. at 294, 363 S.E. 2d at 101 (Greene, J., dissenting). It disagreed with "the majority's erroneous notion of a 'marital gift presumption,'" recognizing *McLeod* as the source. *Id.* This marital gift presumption, it said, contravenes both the express language of N.C.G.S. § 50-20(b)(2) and the source of funds rule underlying *McLeod. Id.* at 295, 363 S.E. 2d at 101-02. The opinion noted that in *Johnson v. Johnson,* 317 N.C. 437, 346 S.E. 2d 430 (1986), this Court overruled the basic presumption of marital property from which the *McLeod* marital gift presumption, in part, was derived. It follows, the dissent im-

plied, that this Court also should overrule the marital gift presumption established in *McLeod. Id.* at 295, 363 S.E. 2d at 102.

The dissent recognized that N.C.G.S. § 50-20(b)(2) also provides that "property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance." *Id.* at 296, 363 S.E. 2d at 102. While this provision may create a presumption that gifts between the spouses are marital property, the dissent stated it "provides no support for the *McLeod* notion that simply 'titling' property jointly[1] creates a 'gift' to the other spouse in the first place." *Id.* It stated further that the Court of Appeals has "wisely declined to extend the *McLeod* presumption to jointly-held 'personal' property," as to do so would defeat the legislative intent of N.C.G.S. § 50-20(b)(2), and opined that "there is no principled distinction which would justify treating real and personal property so differently under Section 50-20(b)(2)." *Id.*, citing *Manes v. Harrison-Manes*, 79 N.C. App. 170, 338 S.E. 2d 815 (1986).[2] The dissenting opinion would have remanded the case so that plaintiff, not defendant, would be required to show that the conveyance "contains the express intent that the Camp Branch [Road] property was acquired as a gift by defendant to the marital estate." *Id.* at 296-97, 363 S.E. 2d at 102.

The underlying premise of the dissenting opinion is that N.C.G.S. § 50-20(b)(2), which defines separate property, is clear and unambiguous. When that is the case, there is no room for construction. *Town of Atlantic Beach v. Young*, 307 N.C. 422, 426, 298 S.E. 2d 686, 689 (1983). Like the Court of Appeals in *McLeod*, however, we find this premise untenable.

The statute reads, in pertinent part:

"Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other

---

1. The property was not simply titled jointly, but rather was titled by the entireties, a unique form of ownership in which title is held by the marital entity. *See infra.*

2. The question presented in *Manes* is not before us, and we express no opinion on how we would resolve it if it were.

spouse during the course of the marriage shall be considered separate property only if such an intention is stated in the conveyance. Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance.

N.C.G.S. § 50-20(b)(2) (1987). Two provisions within this section are pertinent and create ambiguity: the second sentence, or "interspousal gift" provision, and the third sentence, or "exchange" provision.

Under the interspousal gift provision, if the donor wishes his or her separate property to remain separate, the donor must state that intention in the conveyance. If the donor wishes his or her separate property to become the separate property of the donee, the donor also must state that intention in the conveyance. However, under the exchange provision, absent a conveyance expressly stating that the property is marital, the use of separate property to acquire entireties property constitutes merely an exchange and remains separate property.

Difficulty in applying these provisions appears inevitable when they are considered in the juxtaposition of the broad definition of marital property and the expansive definition of separate property within the same statute. As a leading commentator has noted:

It appears that the North Carolina statute is, to a considerable degree, at war with itself. . . . In effect, the statute indicates preferences for both marital and separate property classifications. . . . It remains for the judiciary to delineate the precise boundaries between the classifications and to effect a reconciliation between the dual legislative purposes.

Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C.L. Rev. 247, 271 (1983) [hereinafter *A Preliminary Analysis*].

This Court has long "adhered to the principle that the legislative intent is a controlling factor in the construction of statutes. 'The object of all interpretations of statutes is to ascertain the

meaning and intention of the Legislature . . . .' " *Realty Co. v. Trust Co.*, 296 N.C. 366, 369, 250 S.E. 2d 271, 273 (1979) (quoting *Kearney v. Vann*, 154 N.C. 311, 314-15, 70 S.E. 747, 749 (1911)). In construing the ambiguity created by the "interspousal gift" and "exchange" provisions of N.C.G.S. § 50-20(b)(2), we thus must consider the intent of the legislature in enacting the Equitable Distribution Act.

Prior to passage of this act, our courts applied common-law title concepts to determine the distribution of property upon divorce. 2 R. Lee, *North Carolina Family Law* § 169.3 (4th ed. Supp. 1985). With the advent of no-fault divorce, dependent spouses lost the "bargaining power" of refusing to consent to a divorce. Sharp, *The Partnership Ideal: The Development of Equitable Distribution in North Carolina*, 65 N.C.L. Rev. 195, 196 (1987) [hereinafter *Partnership*]. The combination of no-fault divorce and a "title only" rule for property distribution sometimes led to unconscionable results. *See, e.g., Leatherman v. Leatherman*, 297 N.C. 618, 256 S.E. 2d 793 (1979) (wife worked in home and in husband's closely held corporation for many years but could receive only one-half the marital home upon divorce under prevailing legal theories). Pressure mounted for North Carolina to follow the lead of other states in adopting statutes based on community property or equitable distribution principles. 2 R. Lee, *North Carolina Family Law* § 169.3 (4th ed. Supp. 1985). The General Assembly responded in 1981 by enacting "An Act for Equitable Distribution of Marital Property," codified as N.C.G.S. §§ 50-20, -21. *Id.*

Equitable distribution is based on the idea of marriage as a partnership in which both spouses contribute to the marital economy, whether directly by employment outside the home or indirectly by providing services within the home. *See Smith v. Smith*, 314 N.C. 80, 85-86, 331 S.E. 2d 682, 686 (1985); Sharp, *Partnership*, 65 N.C.L. Rev. at 198-99. "In particular, the concept creates a means for recognition of the contribution of the dependent spouse, who may have sacrificed his or her own career potential for the sake of the other or the marriage itself." Sharp, *Partnership*, 65 N.C.L. Rev. at 199. "[T]hese public policies, coupled with the clear remedial purposes of the statute, make the partnership ideal an eminently suitable 'first principle' for interpretation of the . . . statute by the North Carolina courts." *Id.*

With the foregoing in mind, we must attempt to construe the interspousal gift and exchange provisions so as to avoid ambiguity and effectuate the legislative intent. Were we to construe the exchange provision to include interspousal gifts traceable to separate funds, the exchange provision would swallow the gift provision.

> A literal application of this rule would require that property exchanged for separate property be classified separate even if title to it were taken in the name of the nonowner spouse or by both spouses jointly. Such an interpretation would have the effect of eliminating from marital property any gift between the spouses if the gift property could be traced, through exchanges, to separate property. No jurisdiction has been willing to hold that its legislature could have intended such an extraordinary result.

Sharp, *A Preliminary Analysis*, 61 N.C.L. Rev. at 265.

We, too, do not believe our legislature intended such a result. " 'Exchange' clearly implies that something of value has been received in return. 'Gift,' on the other hand, implies the opposite conclusion. Interpretation of the word 'exchange' to include gifts is a result that the statute does not require and that logic clearly does not recommend." Sharp, *Partnership*, 65 N.C.L. Rev. at 228 n.187. "The integrity of the exchange provisions would not be threatened by a rule that would allow separate property to undergo a theoretically endless number of exchanges and still retain its separate character, so long as it was not *given away." Id.* at 228.

An individual transfer must be considered as either a gift or an exchange. The language of N.C.G.S. § 50-20(b)(2) presupposes a determination whether a transfer was in fact a gift. Common law principles therefore instruct us in determining whether a transfer constitutes a gift.

In making this determination, we consider the intention of the parties. "A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos. . . . [The intention] may be inferred from the relation of the parties and from all the facts and circumstances." 38 C.J.S. *Gifts* § 15 (1943). We therefore look to the facts and the relationship to infer intent.

In *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982), we recognized that "such transfers are normally motivated by love and affection and the desire to make a gift." *Id.* at 53, 286 S.E. 2d at 788. The marital relationship is a confidential one and does not usually entail arm's-length bargaining. It is the intention at the time of the transfer that is germane. *Id.* at 54, 286 S.E. 2d at 788. As plaintiff states in her brief: "People do not normally consider whether the property is marital or separate until the marriage is disintegrated and divorce is imminent. At this point in time, the parties may wish that there was no such thing as marital property, but legally, the intent at the time of the conveyance controls, not how the parties feel later."

We also consider the nature of an estate by the entireties. This estate is a unique form of holding title to real property, available only to married persons.

> [T]enancy by the entirety takes its origin from the common law when husband and wife were regarded as one person . . . . These two individuals, by virtue of their marital relationship, acquire the entire estate . . . . As between them . . . there is but one owner, and that is neither the one nor the other, but both together, in their peculiar relationship to each other, constituting the proprietorship of the whole, and of every part and parcel thereof.

*Carter v. Insurance Co.*, 242 N.C. 578, 579, 89 S.E. 2d 122, 123 (1955). The very nature of the estate strongly suggests that titling property in this manner evidences an intention to make a gift. *See Pascarella v. Pascarella*, 165 N.J. Super. 558, 564, 398 A. 2d 921, 924 (1979).

Thus, considering the nature of the marital relationship and of the entireties estate, we conclude that the marital gift presumption established in *McLeod* is appropriate as an aid in construing N.C.G.S. § 50-20(b)(2). Donative intent is properly presumed when a spouse uses separate funds to furnish consideration for property titled as an entireties estate. *McLeod*, 74 N.C. App. at 154, 327 S.E. 2d at 916-17. This presumption is sufficiently strong that it is, and should be, rebuttable only by clear, cogent,

and convincing evidence.[3] *Id.* Rebuttal of the presumption would then result in application of traditional source of funds analysis.

When property subject to classification is titled as a tenancy by the entirety, therefore, the marital gift presumption controls the initial determination of whether a gift has been made. If a spouse uses separate funds to acquire property titled by the entireties, the presumption is that a gift of those separate funds was made, and the statute's interspousal gift provision applies. Unless that presumption is rebutted by clear, cogent and convincing evidence, the statute dictates that the gift "shall be considered separate property only if such an intention is stated in the conveyance." N.C.G.S. § 50-20(b)(2) (1987).

This interpretation of the statute is not inconsistent with the exchange provision. As stated in *McLeod:* "When property titled by the entireties is acquired in exchange for separate property[,] the conveyance itself indicates the 'contrary intention' to preserving separate property required by the statute." *McLeod,* 74 N.C. App. at 156, 327 S.E. 2d at 918, citing *In re Marriage of Lucas,* 27 Cal. 3d 808, 815, 614 P. 2d 285, 289, 166 Cal. Rptr. 853, 857 (1980) ("The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest.").

The Court of Appeals relied on several sources in adopting the marital gift presumption in *McLeod.* One was the marital property presumption announced in *Loeb v. Loeb,* 72 N.C. App. 205, 324 S.E. 2d 33 (1985). *McLeod,* 74 N.C. App. at 154, 327 S.E. 2d at 917. In *Loeb,* the Court of Appeals held that the language of N.C.G.S. § 50-20 "creates a presumption that all property acquired by the parties during the course of the marriage is 'marital property.'" *Loeb,* 72 N.C. App. at 209, 324 S.E. 2d at 38. This Court rejected that presumption in *Johnson v. Johnson,* 317 N.C. 437, 346 S.E. 2d 430 (1986), stating:

---

3. Defendant testified that he contributed his separate property to a tenancy by the entirety only for federal estate tax purposes. The Court of Appeals in *McLeod* left open what constitutes clear and convincing evidence to rebut the presumption of gift when property is placed in a tenancy by the entirety. *McLeod,* 74 N.C. App. at 158 n.2, 327 S.E. 2d at 919 n.2. The court referred, however, to a case holding that the motive of avoiding inheritance tax explains the reason why the gift was made, and does not refute that a gift was made in the first instance. *In re Marriage of Moncrief,* 535 P. 2d 1137, 1138 (Colo. 1975).

The North Carolina General Assembly, unlike legislatures in [some other] states, did not choose to provide such a presumption by statute, and this Court will not infer one by judicial decision. We believe that the legislature's decision not to provide by statute for a marital property presumption was deliberate. Moreover, we perceive no need for such a presumption, express or implied, in our equitable distribution scheme. Under our statutory scheme, without the aid of any presumption, assets, the classification of which is disputed, must simply be labeled for equitable distribution purposes *either* as "marital" *or* "separate," depending upon the proof presented to the trial court of the nature of those assets.

317 N.C. at 454-55 n.4, 346 S.E. 2d at 440 n.4. *Johnson*, however, did not address the marital *gift* presumption established in *McLeod.* Because marital *property* and marital *gift* presumptions are discrete concepts, *Johnson* does not control the issue here. Moreover, while the marital property presumption is unnecessary under our statutory scheme, *see id.* at 455 n.4, 346 S.E. 2d at 440 n.4, the marital gift presumption established in *McLeod* is necessary to clarify application of otherwise potentially ambiguous provisions of the statute.

Abundant authority and rationale to support the gift presumption remain, even when *Loeb* and the marital property presumption are disregarded. The marital gift presumption is rooted in *Mims*. While the Court there confined its decision to pre-equitable distribution cases, the Court of Appeals acknowledged in *McLeod* that it was "guided by *Mims* in determining the disposition of the entireties property" because "the Court [in *Mims*] was motivated in part by the same concerns that impelled our legislature to enact the equitable distribution statute." *McLeod,* 74 N.C. App. at 153, 327 S.E. 2d at 916. This Court held in *Mims* that "the rule shall be that where a spouse furnishing the consideration causes property to be conveyed to the other spouse, a presumption of gift arises, which is rebuttable by clear, cogent and convincing evidence." *Mims,* 305 N.C. at 53, 286 S.E. 2d at 787. *McLeod* tracked this language in creating a gift presumption rebuttable by "clear, cogent and convincing evidence" in the equitable distribution context. The presumption thus rests on *Mims*, not *Loeb*.

Further, as noted in *McLeod*, the marital gift presumption accords with authority from virtually all other jurisdictions. *McLeod*, 74 N.C. App. at 154, 327 S.E. 2d at 917. The property distribution statutes in some of these jurisdictions differ from our equitable distribution statute. Specifically, many contain a presumption that property acquired after the marriage is marital property. *See, e.g.*, 19 Me. Rev. Stat. Ann. § 722A(3) (1981).[4] We nevertheless find the reasoning of the courts in some of these jurisdictions instructive. For example, in *Carter v. Carter*, 419 A. 2d 1018 (Me. 1980), the Supreme Judicial Court of Maine specifically referred to the common law in stating: "That some couples chose to put property in joint tenancy even though one spouse had paid all of the purchase price from separate funds represented a recognition of the partnership nature of marriage by those couples before the law itself adopted that theory." *Id.* at 1021.

Iowa's equitable distribution statute, like ours, contains no presumption that property acquired during marriage is marital. *See* 39 Iowa Code Ann. § 598.21 (West 1981). In *In re Marriage of Butler*, 346 N.W. 2d 45 (Ia. App. 1984), the husband used his separate funds to construct a home titled in joint tenancy with the wife. The court held that a gift of a one-half interest is presumed when one party furnishes consideration for property taken in joint tenancy. *Id.* at 47. It emphasized that the husband had, in purchasing the home and furniture, "made the money available *to the marital unit* for its unrestricted use and benefit." *Id.* (emphasis added).

Especially when, as here, the marital home is titled by the entireties, the gift presumption is most likely to effectuate the intention of the parties as well as the partnership ideal which underlies the Equitable Distribution Act.

---

4. Maine's statute reads in part:

3. Acquired subsequent to marriage. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is *presumed to be marital property* regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2. 19 Me. Rev. Stat. Ann. § 722(A)(3) (1981) (emphasis added).

For the foregoing reasons, we hold that *McLeod* was decided correctly, and we adopt the marital gift presumption established therein for interpretation and application of N.C.G.S. § 50-20(b)(2). When a spouse uses separate property in the acquisition of property titled by the entireties, a gift to the marital estate is presumed. This presumption is rebuttable only by clear, cogent and convincing evidence that a gift was not intended.

The conveyance here contained no express statement of separate property intention. N.C.G.S. § 50-20(b)(2) (1987). By titling the property by the entireties, "the conveyance itself indicates the 'contrary intention' to preserving separate property required by the statute." *McLeod*, 74 N.C. App. at 156, 327 S.E. 2d at 918. Defendant thus is presumed to have intended a gift to the marital estate of his separate funds used in the purchase. The Court of Appeals was correct in stating that "[w]hether defendant succeeded in rebutting the presumption of gift to the marital estate by clear, cogent, and convincing evidence is a matter left to the trial court's discretion," *McLean*, 88 N.C. App. at 290, 363 S.E. 2d at 98-99, for it is the trial court that must find the evidence convincing. *See Draughon v. Draughon*, 82 N.C. App. 738, 739-40, 347 S.E. 2d 871, 872 (1986), *cert. denied*, 319 N.C. 103, 353 S.E. 2d 107 (1987). It was also correct in finding competent evidence to support the trial court's findings, and in thus declining to disturb the trial court's rulings. This aspect of the Court of Appeals opinion is therefore affirmed.

## II. VALUATION OF DEFENDANT'S LAW PRACTICE

[2] Defendant next argues that the trial court erred in allowing improper evidence of the value of his law practice and in making its findings of fact, conclusions of law, and orders regarding such value. Defendant specifically excepts to the admission of a C.P.A.'s testimony regarding the value of the law practice. The trial court received the C.P.A. as an expert and allowed him to testify, over objection, that he valued the law practice at $61,910. Defendant argues that because the C.P.A. did not base his valuation on the criteria set forth in *Poore v. Poore*, 75 N.C. App. 414, 331 S.E. 2d 266, *disc. rev. denied*, 314 N.C. 543, 335 S.E. 2d 316 (1985), his opinion should not have been admitted.

The Court of Appeals correctly noted that the standard for admissibility of an expert's opinion is whether it " 'will assist the

trier of fact to understand the evidence or to determine a fact in issue.' " *McLean*, 88 N.C. App. at 291, 363 S.E. 2d at 99-100, citing N.C.G.S. § 8C-1, Rule 702. Defendant complains that while Rule 702 provides the proper standard, the Court of Appeals failed to analyze whether the opinion testimony here was in fact helpful to the trier of fact.

The C.P.A. testified that he examined corporate tax returns of the professional association covering a three year period and based his valuation on those documents. He did not have access to defendant's individual tax returns. He testified that he used the most conservative approach possible to evaluate the worth of the professional association. He tried to value the "hard assets" of the business and used a "very, very low" multiple to value its goodwill and intangible assets. On cross-examination he testified that he knew of no sales of law practices in the Asheville area during the preceding ten years. He did not discuss the nature of the practice with defendant, nor did he consider defendant's type of work when valuing the practice. He admitted that the value was based on finding a willing buyer. In assessing the firm's accounts receivable, he did not consider the age of the accounts. In attempting to depreciate certain assets, he called his figure a "pot shot." The C.P.A. testified that he did not determine defendant's age, health, professional reputation, or length of time in practice when making the valuation. He did not gauge the "comparative professional success" of defendant's law practice against other law practices in the area. Finally, he testified that he knew the plaintiff and worked for her current husband.

The foregoing is all relevant in considering the expert witness' credibility, but it does not render his opinion testimony inadmissible. The factors detailed in *Poore*, discussed below, relate to the weight to be accorded such evidence, not to its admissibility. The determination of admissibility of expert opinion testimony is within the sound discretion of the trial court, and the admission of such testimony will not be reversed on appeal unless there is no evidence to support the finding that the witness possesses the requisite skill. *State v. Bullard,* 312 N.C. 129, 140, 322 S.E. 2d 370, 376 (1984); *State v. King,* 287 N.C. 645, 658, 215 S.E. 2d 540, 548-49 (1975), *death sentence vacated,* 428 U.S. 903, 49 L.Ed. 2d 1209 (1976). "Once expertise is demonstrated, the test of admissibility is helpfulness." 1 Brandis on North Carolina

Evidence § 132, at 590 (3d ed. 1988). If the witness is better qualified than the trier of fact to form an opinion, that witness may render an opinion regarding the subject matter. *State v. Howard,* 78 N.C. App. 262, 270, 337 S.E. 2d 598, 604 (1985); 1 Brandis on North Carolina Evidence § 132. The witness need not be experienced with the identical subject area in a particular case. *Bullard,* 312 N.C. at 140, 322 S.E. 2d at 376; *see State v. Phifer,* 290 N.C. 203, 213, 225 S.E. 2d 786, 793 (1976), *cert. denied,* 429 U.S. 1123, 51 L.Ed. 2d 573 (1977).

While admittedly unfamiliar with the specific subject area of sale of law practices in the Asheville area, the C.P.A.'s training and experience gave him knowledge sufficient to render him better qualified than the trier of fact to value an interest in a law practice. The trier of fact made the determination that the witness' testimony would be helpful, and we find no error or abuse of discretion in that determination. *See* 1 Brandis on North Carolina Evidence § 133, at 595 ("A finding . . . that the witness is qualified will not be reversed unless there was no competent evidence to support it or the judge abused his discretion.").

The trial court used a "return on investment" approach to arrive at the figure $35,412 as the net market value of defendant's professional association. It then rounded off the figure to $35,000. The Court of Appeals vacated the findings with respect to the valuation of defendant's law practice because "there was no evidence before the court to support the rate of return used by the court in making its calculations or to indicate that such a method would yield an accurate valuation." *McLean,* 88 N.C. App. at 292, 363 S.E. 2d at 100. Defendant asks us to instruct the trial court to consider on remand the factors set forth in *Poore.*

In *Poore* the Court of Appeals considered the problem of valuing a solely-owned dental practice for equitable distribution purposes. The court noted that there is no single best approach to the problem of valuing an interest in a professional practice, and that an appellate court's task "is to determine whether the approach used by the trial court reasonably approximated the net value of the partnership interest." *Poore,* 75 N.C. App. at 419, 331 S.E. 2d at 270, citing *Weaver v. Weaver,* 72 N.C. App. 409, 324 S.E. 2d 915 (1985). It acknowledged that "valuation of each individual practice will depend on its particular facts and cir-

cumstances," and directed that trial courts should consider the following components of the practice: "(a) its fixed assets including cash, furniture, equipment, and other supplies; (b) its other assets including accounts receivable and the value of work in progress; (c) its goodwill, if any; and (d) its liabilities." *Id.* On remand, the trial court should consider these factors in making its calculations. The factors are not criteria for the admissibility of evidence, but they should enter into the weighing of the evidence presented regarding valuation, as reflected by the findings of fact.

The equitable distribution judgment here reflects no consideration of goodwill, other than noting that the court chose a return on investment approach in part "because of the difficulty in arriving at a good will value." In *Poore* the court discussed the problem of appraising goodwill and suggested various approaches, including market value, capitalization of excess earnings, and average gross annual income. *Id.* at 421-22, 331 S.E. 2d at 271-72. "In ordering a distribution of marital property, a court should make specific findings regarding the value of a spouse's professional practice and the existence and value of its goodwill, and should clearly indicate the evidence on which its valuations are based, preferably noting the valuation method or methods on which it relied." *Id.* at 422, 331 S.E. 2d at 272. We agree that goodwill should be valued, but we join the Court of Appeals in cautioning trial courts "to value goodwill 'with great care, for the individual practitioner will be forced to pay the ex-spouse "tangible" dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements.' " *Id.* at 421, 331 S.E. 2d at 271 (quoting *Dugan v. Dugan,* 92 N.J. 423, 435, 457 A. 2d 1, 7 (1983) ). The factors listed in *Poore* as relevant in valuing goodwill—age, health, reputation of the practitioner, nature of the practice, length of time in existence, profitability, and comparative professional success—are helpful, though not exclusive or absolute.

Affirmed.