BRYANT, Judge.
*265 Where the trial court had jurisdiction to order plaintiff to sell her separate property to satisfy a distributive award, order that the transfer of a deed from plaintiff to a third-party relative be avoided, and distribute marital debts owed by the parties and where the trial court made sufficient findings of fact to justify its distributive award, we affirm. However, where the trial court's award included an alternative money judgment against a non-party, we vacate that portion of the judgment.
*266 Plaintiff Andrea Crowell and defendant William Crowell were married on 11 July 1998. They were legally separated on 3 September 2013 and divorced in April 2015. No children were born of the marriage.
Prior to the parties' marriage, defendant was president and shareholder of several corporations: Inwood Properties, Inc. ("Inwood Properties"); Inwood Land LLC ("Inwood Land"); Inwood Homes; Inwood Realty Corp.; St. Vrain Valley Associates LP ("St. Vrain"); Owl's Head Ranch, LLC; and WWC Valley. In March 2011, Elizabeth Temple, defendant's daughter from a previous marriage, was named president of the companies. At the time of trial, the companies were owned and controlled by defendant, Temple, and defendant's sons (also from a previous marriage), with Temple and defendant's sons holding "the same amount of shares."[1]
After the parties married, they developed a pattern of living beyond their means. As a result, defendant began to take salaries from his various companies which were not justified by their revenues, plaintiff and defendant began liquidating defendant's separate property, and plaintiff and defendant took out loans against both parties' separate property.
At the time of separation, the marital debt which had been incurred to fund the parties' marital lifestyle was significant. Plaintiff and defendant owed money to almost every company in which defendant maintained an ownership interest, including (1) $422,368.00 to Inwood Properties; (2) $258,737.00 to Inwood Land; and (3) $143,285.00 to St. Vrain. The primary marital asset, the marital residence, was sold in 2014 after the parties' separation for $1,075,000.00, which sale produced $230,657.00 in net proceeds. From these proceeds, plaintiff received a total interim distribution of $144,794.00 and defendant received $85,863.00.
At the time of separation, the trial court found that plaintiff's separate property included two pieces of real property-14212 Stewart's Bend Lane and 14228 Stewart's Bend Lane[2] -located in Charlotte, North *329 Carolina. On or about 30 May or 1 June 2015, plaintiff transferred 14228 Stewart's Bend Lane to her son, Gentry Kirby. At that time, the property had an equity of $100,000.00, and Kirby assumed the mortgage. *267 On 17 February 2014, plaintiff filed a complaint against defendant for equitable distribution, alimony, and post-separation support. Defendant filed an answer and included a counterclaim for equitable distribution. The case came on for trial before the Honorable Christy T. Mann in Mecklenburg County District Court from 6 to 8 July 2016. At the time of trial, defendant was seventy-six years old and suffered from memory loss and dementia, and he had also been diagnosed with Alzheimer's disease. Defendant did not appear at trial, but his daughter, Temple, who is her father's power of attorney, testified about matters and facts related to defendant's assets, debts, income, and expenses. Plaintiff appeared pro se . On 15 August 2016, the trial court entered its equitable distribution judgment and alimony order. Plaintiff appeals.
_________________________
On appeal, plaintiff contends that the trial court committed reversible error by (I) entering a judgment affecting title to real property without joining all necessary parties to the action; (II) entering monetary judgments against a third-party without joining the third-party to the action; (III & IV) classifying and distributing the debts of private corporations to a husband and wife without joining the corporations as parties to the action; (V) creating a distributive award without finding that the statutory presumption of an in-kind distribution has been rebutted; and (VI) ordering the liquidation of separate property to satisfy a distributive award.
In equitable distribution cases, "the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." Lee v. Lee , 167 N.C.App. 250, 253, 605 S.E.2d 222, 224 (2004) (quoting Shear v. Stevens Bldg. Co., 107 N.C.App. 154, 160, 418 S.E.2d 841, 845 (1992) ).
Equitable distribution is vested in the discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute, will establish an abuse of discretion.
Wiencek-Adams v. Adams , 331 N.C. 688, 691, 417 S.E.2d 449, 451 (1992) (internal citations omitted). "A trial court's findings of fact in an equitable distribution case are conclusive if supported by any competent evidence."
*268 Fitzgerald v. Fitzgerald , 161 N.C.App. 414, 419, 588 S.E.2d 517, 521 (2003) (citing Mrozek v. Mrozek , 129 N.C.App. 43, 48, 496 S.E.2d 836, 840 (1998) ).
"[E]quitable distribution is a three-step process; the trial court must (1) 'determine what is marital [and divisible] property'; (2) 'find the net value of the property'; and (3) 'make an equitable distribution of that property.' " Robinson v. Robinson , 210 N.C.App. 319, 322, 707 S.E.2d 785, 789 (2011) (second alteration in original) (quoting Beightol v. Beightol , 90 N.C.App. 58, 63, 367 S.E.2d 347, 350 (1988) ).
I
Plaintiff first argues that the trial court erred in entering a judgment affecting title to real property-14212 Stewart's Bend Lane-without joining all necessary parties to the action. Plaintiff contends that because CKE Properties, Inc. was the lawful owner of 14212 Stewart's Bend Lane on the date of separation ("DOS"), the Mecklenburg County District Court lacked jurisdiction to enter its order affecting said property, and therefore, its valuation and distribution constitutes reversible error. We disagree.
In an equitable distribution action, the trial court has authority to distribute "presently owned" real and personal property acquired during the marriage and before the date of separation. N.C. Gen. Stat. § 50-20(b)(1) (2015).
*330 "[W]hen a third party holds legal *331 title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property." Upchurch v. Upchurch , 122 N.C.App. 172, 176, 468 S.E.2d 61, 63-64 (1996) (emphasis added) (citations omitted). Separate property, on the other hand, is to be considered by the trial court in making its distribution of marital property. See Young v. Gum , 185 N.C.App. 642, 648, 649 S.E.2d 469, 474 (2007) (citation omitted) (noting that the trial court is required to "consider the separate property in making a distribution of the marital property").
In the instant case, the trial court found as fact that this property was plaintiff's separate property: "On the DOS, Plaintiff/Wife owned a house and lot located at 14212 Stewart's Bend Lane, Charlotte, NC 28277 ("14212 Stewart's Bend"). 14212 Stewart's Bend is Wife's separate property, as stipulated by the parties on the FPTO [ (Final Pretrial Order) ]. (FPTO Property Item 11 )." In the distribution portion of its order, the trial court ordered plaintiff to do as follows:
*269 b) ... 14212 Stewart's Bend: Within thirty (30) days of the date of the execution of this Judgment/Order Plaintiff/Wife shall sign a listing agreement with a realtor selected by Defendant/Husband and will take all efforts to sell 14212 Stewart's Bend for fair market value. Plaintiff/Wife will cooperate with price reductions and repair requests recommended by the real estate agent and will accept any unconditional offer made within 2% of the then asking price. All of the net proceeds shall be paid to Defendant/Husband.
Plaintiff contends that the trial court did not have jurisdiction to enter a judgment affecting 14212 Stewart's Bend Lane because it was not owned by her, but by another legal entity, CKE. In so doing, plaintiff relies on this Court's opinion in Nicks v. Nicks , 241 N.C.App. 487, 774 S.E.2d 365, (2015).
In Nicks , a husband and wife, prior to their separation, implemented an estate plan consisting of a trust and three LLCs, which eventually became a single-member LLC, "Entrust." Id. at 491, 774 S.E.2d at 370. The husband and wife were the only beneficiaries of the trust, and the husband managed the LLC and had the right to decide whether to make distributions of profits and assets from the trust. Id. at 491-92, 774 S.E.2d at 370. In the trial court's findings of fact, it determined that Entrust was marital property and ordered that its assets be distributed to the husband, but that the husband pay the wife a distributive award. Id. at 493-94, 774 S.E.2d at 371. On appeal, the husband argued the trial court erred in distributing Entrust to him because neither Entrust, the LLC, nor the trust itself were owned by either of the parties on the date of separation; rather, the trust, not the husband, owned a 100% interest in Entrust. Id. at 494-95, 774 S.E.2d at 372.
This Court agreed with the husband's argument, concluding as follows:
[T]he Trust-which holds legal title to Entrust-was never named as a party to this action. We therefore hold that the trial court lacked jurisdiction to order equitable distribution of Entrust . See, e.g. , Upchurch , 122 N.C.App. at 176, 468 S.E.2d at 64 ("Otherwise the trial court would not have jurisdiction to enter an order affecting the title to that property.") (citation omitted).
Id. at 496, 774 S.E.2d at 373 (emphasis added). In other words, because the party-the Trust-which held legal title to the LLC-Entrust-was *270 not named as a party to the action in Nicks , the trial court lacked jurisdiction to distribute that property which an unnamed party held legal title to. Id. ; see also Dechkovskaia v. Dechkovskaia , 232 N.C. App. 350, 352-54, 754 S.E.2d 831, 834-35 (2014) (holding the trial court had no authority to classify and distribute houses which were titled in the name of the parties' minor child without joining the minor child as a party to the action).
Plaintiff's argument in reliance on Nicks ignores the fact that the trial court did not classify 14212 Stewart's Bend Lane as marital property and distribute it as such. See Upchurch , 122 N.C.App. at 176, 468 S.E.2d at 63-64 ("[W]hen a third party holds legal title to property which is claimed to be marital property, that third party is a necessary party to the equitable distribution proceeding, with their participation limited to the issue of the ownership of that property." (emphasis added) (citations omitted)). Rather, it considered the separate property of plaintiff-CKE and its assets, including 14212 Stewart's Bend Lane-in making its distribution of the marital property, namely, in ordering plaintiff to pay a distributive award to defendant. See Young , 185 N.C.App. at 648, 649 S.E.2d at 474 (noting that the trial court is required to "consider the separate property in making a distribution of the marital property").
Even if it is true that there is evidence in the record to indicate that as of the DOS, CKE was the legal owner of 14212 Stewart's Bend Lane,[3] the trial court's classification of this property as plaintiff's separate property does not constitute reversible error where it was not distributing the property as part of the marital estate. See Upchurch , 122 N.C.App. at 176, 468 S.E.2d at 63-64. Cf. Geoghagan v. Geoghagan , --- N.C.App. ----, ----, 803 S.E.2d 172, 175-76 (2017) (vacating an equitable distribution order where the trial court ordered third-party LLCs "to refrain from taking certain actions without joining them as necessary parties to the proceedings"). Rather, the trial court was considering plaintiff's separate property in distributing the marital estate, specifically considering plaintiff's ability to pay a distributive award to defendant. As the "100% Owner" of CKE, which was formed in 2002 and whose "[o]nly purpose ... is to own the real estate she purchased through a 1031 exchange using her separate funds," the trial court was allowed to consider CKE's assets, including 14212 Stewart's Bend Lane, in ordering plaintiff to sell the property in order to pay the distributive award. Defendant's argument is overruled.
*271 II
Next, plaintiff contends the trial court erred by entering monetary judgments against a third-party, namely, plaintiff's son, Gentry Kirby, without joining him to the action. Plaintiff contends that because Kirby was the lawful owner of 14228 Stewart's Bend Lane on the DOS, the trial court lacked jurisdiction to enter a judgment affecting title to 14228 Stewart's Bend Lane or to enter an alternative money judgment against Kirby because defendant did not assert a claim against him in this action. We agree that the trial court erred in entering an alternative money judgment against Kirby.
Defendant contends that although the trial judge did not expressly state in her ruling that she was applying the factors to be considered in analyzing a transfer contended to be voidable under the Uniform Fraudulent Transfer Act, N.C. Gen. Stat. §§ 39-23.1 (2013) et seq. ,[4] it is nonetheless clear that the facts in this case fall within the statute and the result is that plaintiff's transfer was fraudulent and thus, voidable. Defendant also argues that Kirby was not required to be made a party to this action in order for the trial court's remedies to be applied because Kirby did not take the property in good faith or for a reasonably equivalent value. Cf. N.C.G.S. § 39-23.8(a) (2013) ("A transfer or obligation is not voidable under G.S. 39-23.4(a)(1) against a person that took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").
The Uniform Fraudulent Transfer Act was designed to prevent fraudulent transfers and allow a creditor to cancel a transfer even after it has been made. See generally id. §§ 39-23.1 et seq. Specifically, N.C. Gen. Stat. § 39-23.4(a)(1) establishes as fraudulent any *332 transfer of property that is made with the intent to hinder, delay, or defraud a creditor. Id. § 39-23.4(a)(1). A "creditor" is defined broadly as "a person who has a claim." N.C.G.S. § 39-23.1(4) ; see Note, Benjamin M. Ellis, Protecting the Right to Marital Property: Ensuring a Full Equitable Distribution Award with Fraudulent Conveyance Law , 30 Cardozo L. Rev. 1709, 1712 (2009) (proposing that "a spouse should be considered a creditor-and thus have recourse to fraudulent conveyance law-for the limited purpose of setting aside conveyances that would otherwise prevent the spouse from receiving a full equitable distribution award"). The *272 remedies available to a creditor include "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;" "[a]n attachment ... against the asset transferred"; or "[a]ny other relief the circumstances may require." N.C.G.S. § 39-23.7(1), (2), (3) c.
A conveyance will be deemed fraudulent and thus void in either of the following instances:
If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee....
....
... If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the grantor , participated in by the grantee or of which he he [sic] has notice, it is void.
Norman Owen Trucking, Inc. v. Morkoski , 131 N.C.App. 168, 173, 506 S.E.2d 267, 271 (1998) (citation omitted) (quoting Aman v. Walker , 165 N.C. 224, 227, 81 S.E. 162, 164 (1914) ).
In determining intent [of the grantor] under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:
(1) The transfer or obligation was to an insider[5 ];
....
(3) The transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
....
(12) The debtor made the transfer or incurred the obligation without receiving a reasonable equivalent value in exchange for the transfer or obligation....
N.C.G.S. § 39-23.4(b).
*273 At trial, plaintiff, who appeared pro se ,[6] argued as follows:
May 30, 2015 I gifted [14228 Stewart's Bend Lane] to [Kirby]. I was going to give it to him anyway.... I had discussed gifting it earlier. But I gifted it now because it was the time to do it, and they will tell you it was because I did not want to sell it and split the money. I couldn't have ever sold this this fast, nor did I feel the necessity to kick my family out.
Evidence in the record also suggests that defendant was not made privy to this transfer until after it was accomplished.
The trial court found as follows regarding the transfer of 14228 Stewart's Bend Lane to Kirby:
74. In 2015, Defendant/Husband asked Plaintiff/Wife to sell 14228 Stewart's Bend so as to eliminate the marital debt and distribute the net proceeds between them. Plaintiff/Wife refused.
75. Shortly thereafter, Plaintiff/Wife "gifted" the home to her son Gentry Kirby ("Mr. Kirby"), who was well aware of this divorce proceedings [sic] and the contentions of the parties about the distribution and payment of real property and debts. At the time of the gift, 14228 Stewarts Bend [sic] was worth $390,000 resulting in a $100,000 "gift" of equity to Mr. Kirby.
76. The Court finds that this transfer/gift of valuable real property by Plaintiff/Wife to Mr. Kirby constitutes a fraudulent *333 transfer to defraud creditors, that Mr. Kirby was not a good faith purchaser for value (in an arms' length transaction) and that the home and/or the equity contained therein is within this Court to consider in determining the equitable distribution of the property and/or the distributive award that Plaintiff/Wife may be required to pay. Nytco Leasing, Inc. v. Southern Motels, Inc. , 40 N.C.App. 120, 252 S.E.2d 826 (1979) ; McCanless v. Flinchum , 89 N.C. 373 (1883) (when property is sold to a family member for less than reasonable value and the grantor is unable to pay his debts, the close family relationship is strong evidence of *274 fraudulent intent). Mr. Kirby does not need to be a party to this lawsuit in order for this Court to consider this property and the disposition thereof as part of this litigation.
The trial court ordered plaintiff as follows:
198.... The Court finds [plaintiff] has the ability to pay the distributive award only as follows:
....
c) 14228 Stewart's Bend: Plaintiff/Wife can obtain a deed to this house back from Mr. Kirby, sell the property and distribute the net proceeds to Defendant/Husband or she can have Mr. Kirby pay to Defendant/Husband $90,000 which represents the majority of equity he gained during the fraudulent "gift/transfer" to him of this property.
....
6..... Plaintiff/Wife shall pay Defendant/Husband as follows:
....
c) 14228 Stewart's Bend: Within sixty (60) days of the date of the execution of this Judgment/Order Plaintiff/Wife shall sign a listing agreement with a realtor selected by Defendant/Husband and will take all efforts to sell this home for fair market value; OR Mr. Kirby will pay to Defendant/Husband $90,000 which represents the majority of the equity he gained during the fraudulent "gift/transfer" to him of this property .
(Emphasis added).
In the instant case, the record indicates evidence of the following statutory factors in the transaction between plaintiff and Kirby: (1) the transfer of property to an insider, her son, see id. § 39-23.4(b)(1) ; (2) the transfer was concealed from defendant, see id. § 39-23.4(b)(3) ; (3) the property was gifted to Kirby on 30 May 2015, after 17 February 2014, when plaintiff filed her complaint, and also after 29 April 2014, when defendant filed his answer and counterclaim for equitable distribution, see id. § 39-23.4(4) ; and (4) plaintiff made the transfer without receiving *275 a reasonable equivalent value in exchange-the transfer to her son was a "gift," see id. § 39-23.4(12). Accordingly, the trial court correctly concluded that the transfer from plaintiff to Kirby "constitute[d] a fraudulent transfer to defraud creditors, [and] that Mr. Kirby was not a good faith purchaser for value...." Thus, the trial court also had jurisdiction to order that the transfer of the deed from plaintiff to Kirby be avoided.
However, with regard to the trial court's alternative order that "Mr. Kirby pay to Defendant/Husband $90,000 which represents the majority of equity he gained during the fraudulent 'gift/transfer' to him of th[e] [14228 Stewart's Bend] property[,]" we agree with plaintiff that the trial court lacked jurisdiction to enter such an order against Kirby, a non-party to this action.
"Pursuant to the Equitable Distribution Act, the trial court is only permitted to distribute marital and divisible property." Mugno v. Mugno , 205 N.C. App. 273, 277, 695 S.E.2d 495, 498 (2010) (citations omitted). "An equitable distribution order is not the proper means to hold ... a third party[ ] responsible for a debt owed...." Id. (holding that the trial court erred by ordering the husband's corporation, a third party, to pay funds to the wife in an equitable distribution action where the corporation was determined to be separate property). Accordingly, we hold the trial court erred by ordering, even in the alternative, Kirby, a third party, to pay funds to defendant. Therefore, we vacate in part paragraph 6 of the equitable distribution order so that it reads as follows:
*334 6.... Plaintiff/Wife shall pay Defendant/Husband as follows:
....
c) 14228 Stewart's Bend: Within sixty (60) days of the date of the execution of this Judgment/Order Plaintiff/Wife shall sign a listing agreement with a realtor selected by Defendant/Husband and will take all efforts to sell this home for fair market value; OR Mr. Kirby will pay to Defendant/Husband $90,000 which represents the majority of equity he gained during the fraudulent "gift/transfer" to him of this property.
*276 III & IV
Plaintiff next argues the trial court erred by distributing the debts of private corporations to a husband and wife without joining the corporations as parties to the action. Specifically, plaintiff claims the trial court could not enter a judgment in favor of Temple, Inwood Properties, Inwood Land, or St. Vrain because these entities were not parties to this case. We disagree.
As a threshold matter, the trial court did not "enter a money judgment in favor of Elizabeth Temple"; rather, it distributed certain marital debts to defendant, see infra , and provided for a mechanism to ensure those marital debts would get paid:
38. In the event there is any cost or expense associated with the sale [of the Constitution Lot, a lot located in Ajiic, Mexico and classified as marital property], Plaintiff/Wife shall be responsible for the cost or expense. In the event that there are any net proceeds from the sale, the entirety of the net proceeds will be distributed to Defendant/Husband which funds will first be paid to Ms. Temple to satisfy Defendant/ Husband's debt to Ms. Temple if it has not yet been paid . If the debt to Ms. Temple has already been satisfied, or there are additional net proceeds from the sale above the amount needed to satisfy the debt to Ms. Temple, the remaining net proceeds shall be paid directly to any company to which Defendant/Husband still owns [sic] a liability (as provided hereinafter).
Notably, plaintiff's argument ignores the trial court's previous two findings of fact, which indicate that Temple, as defendant's power of attorney, testified at trial that she would "take on [the] task" of selling the Constitution Lot (a marital property located in Mexico and distributed to defendant for the purpose of selling it) on behalf of defendant. The Court further ordered that Temple was authorized "to contract with real estate agents, notaries, and the like in Mexico to accomplish the sale of the Constitution Lot at fair market value," and it is these administrative costs which the trial court was presumably contemplating in Finding of Fact No. 38 when it referred to any debts defendant might need to repay to Temple. Plaintiff's argument on this point is overruled.
Plaintiff also challenges distributions to defendant's various companies. Plaintiff argues that the trial court was without jurisdiction to enter a judgment in favor of the various companies and/or that the trial court was without authority to classify and distribute debt as marital debt, *277 when plaintiff claims defendant alone misappropriated those funds. We disagree.
"[F]or the purpose of an equitable distribution, a marital debt is defined as a debt incurred during the marriage for the joint benefit of the parties ." Geer v. Geer , 84 N.C.App. 471, 475, 353 S.E.2d 427, 429 (1987) (emphasis added) (citation omitted).
With regard to these debts-which plaintiff contends are not marital or divisible property-the trial court found as fact the following:
13. After Ms. Temple took over as President of Inwood Properties and the remaining Companies, she ... reviewed the books of the companies and determined that Defendant/Husband and Plaintiff/Wife were borrowing money from the Companies to the detriment of the Companies themselves and to the other shareholders. After realizing that the Companies could no longer afford to pay Defendant/Husband the distributions and salary he was enjoying or keep loaning Defendant/Husband and Plaintiff/Wife money to afford their personal expenses *335 they arranged for the parties to pay the Companies back the debts that had been accumulated for their own personal benefit.
14. The Companies continued to loan money to the parties in the short run, but it is clear that the intent was for these loans to be repaid and the steady stream of money to be paid to the parties or for their personal expenses was to be cut off.
15. The loan amounts are outlined infra , but each of these loans were made during the parties' marriage and most of the money can be traced through deposits directly into the parties' personal joint bank account , to pay off personal credit cards, to purchase real estate in their personal name, and to expenses that had to be theirs personally.
16. Plaintiff/Wife argued that this was not the case and if it was she wasn't aware of the loans or that the money was being paid to Defendant/Husband (and her) in the form of a loan that was to be paid back.
17. The Court does not believe Plaintiff/Wife's position is credible. This position of doubt is fostered by the fact that Plaintiff/Wife participated in securing loans in her *278 individual names [sic] and in Defendant/Husband's name (secured by her real property) .
....
19. The Court's concerns about Plaintiff/Wife's credibility impacts [sic] all remaining issues in this case .
(Emphasis added).
"As fact finder, the trial court is the judge of the credibility of the witnesses who testify. The trial court determines what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom." Cornelius v. Helms , 120 N.C.App. 172, 175, 461 S.E.2d 338, 340 (1995) (citing Gen. Specialties Co., Inc. v. Nello L. Teer Co. , 41 N.C.App. 273, 275, 254 S.E.2d 658, 660 (1979) ). Accordingly, where this Court defers to the trial court's finding that plaintiff's testimony was not credible, and where competent evidence in the record supports the trial court's classification of these debts as marital property, see Miller v. Miller , 97 N.C.App. 77, 81, 387 S.E.2d 181, 184-85 (1990) (citation omitted) (noting that findings are binding on appellate courts when supported by competent evidence in equitable distribution proceedings), the trial court did not err in distributing the marital debt. The following evidence in the record supports the trial court's classifications of these debts, secured by the following properties and/or companies, as marital property.
1. The Strand Debt ($376,900.00).
At trial, Temple testified as follows: "December 2006, a line of credit was taken out in [plaintiff's] name on a company asset called 1300 The Strand. The loan amount was $377,000. The proceeds-the total proceeds are deposited into Inwood's account, and then $109,990 is deposited into the marital account in a loan form ...." (Emphasis added).
2. The Ranch Debts ($82,919.00, $92,927.00, $70,026.00, and $198,768.00).
Temple testified as follows regarding the loans secured by The Ranch property: (1) "[I]n 2002 [defendant] ... gets a loan against [the] ranch, which was previously completely debt free, for $205,000. And as you can see, $79,290.46 of those proceeds are directly transferred to the marital account ." (Emphasis added). (2) "Another loan is taken out against the ranch for [$]250,000, and of these-and pretty much the entire proceeds are deposited directly into Inwood's account. And then shortly after, two deposits totaling [$]151,080 are deposited into the marital account ." (Emphasis added). (3) "In May 2005 another loan is taken against [the]
*279 ... ranch for $200,000, and it's actually an equity maximizer account, so it can be drawn on whenever they want, and it's drawn up to-$130,000 of draws occurred in 2005 ." (Emphasis added). (4) "[L]ater in 2012 a part of the loan that was taken out on the ranch property back in 2005 was classified as [defendant's], as loan-money loaned to [defendant] and [plaintiff] because that amount from those loans was actually deposited into their marital account ." (Emphasis added).
*336 3. Inwood Properties Debt ($422,368.00).
Temple read defendant's contentions into the record regarding the Inwood Property loan as follows:
A. (Reads.) "Throughout the marriage husband and wife borrowed money from Inwood Properties for their personal expenses . This was money husband was not entitled to as the officer or shareholder of the company, and as of the date of separation this was the total. After the date of separation husband sold his stock in Inwood Properties to satisfy this debt in part and will have to pay the tax consequences of approximately $80,000 due to the stock repurchase.
Q. And what is the amount that husband contends is due as of September 3, 2013?
....
A.... $422,368.
(Emphasis added).
4. Inwood Land Debt ($258,737.00).
Temple testified about the Inwood Land Debt as follows:
Q.... And what did Inwood Land do and how was it that [defendant] was able to draw money from the Inwood Land accounts?
A. Inwood Land is our operating company in Charlotte. It was created as a North Carolina LLC so that we could operate our office.
Q. Okay.
A.... [M]oney is deposited monthly into Inwood Land's account and then we run the operating expenses for the *280 Charlotte office out of that, and if there was excess money it, was borrowed. [Defendant] later borrowed it from Inwood Land and deposited it directly into the marital account .
Q. Okay. And according to the QuickBooks records that amount was-well, read that into the record.
A. That amount at date of separate [sic] is $258,737.
(Emphasis added).
5. St. Vrain Debt ($143,285.00).
Temple also testified as follows regarding the debt secured by the St. Vrain company:
Q.... [D]id [defendant] also borrow money from [St. Vrain] throughout the years?
A. Yes.... [I]t starts in 2003 with a direct transfer to [plaintiff's] personal account for $3500. And then this continues in various forms. And then it's sometimes paid back, but it carries a significant balance until December 2011....
....
Q.... And what was the amount that was owed to St. Vrain on date of separation?
A. $143,285.
Lastly, with regard to all of the debts accrued by plaintiff and defendant and secured against various separately-owned companies and properties, Temple testified as follows:
Q.... In 2011, when you started having discussions with [plaintiff] and [defendant] did you explain to her, ... that [defendant] was borrowing from this company to this company to this company to this company to pay their living expenses?
A. Yes, I believe we all talked about it in terms of robbing Peter to pay Paul.
Q. And was there-did she ever dispute or say well, at that point well, when did that-he's a shareholder, he can take what he wants to take, that's his business, not mine?
A. No.
*281 As the foregoing testimony and other examples from the record demonstrate, the trial court was not, as plaintiff contends, "classif[ying] and distribut[ing] the debts of private corporations." Rather, competent evidence in the record shows that the trial court was properly classifying and distributing marital debt: the trial court found that defendant took advantage of his position as a stockholder in various companies to borrow money which was used for the purpose of funding his and plaintiff's extravagant lifestyle. Indeed, most of the loan proceeds can be traced to deposits made directly into the parties' personal bank accounts. Accordingly, the trial court had authority and jurisdiction to distribute to the parties the debts owed to the companies as marital debt. Plaintiff's argument is overruled.
*337 V
Plaintiff argues the trial court erred by creating a distributive award without finding that the statutory presumption of an in-kind distribution had been rebutted. Specifically, plaintiff contends that it failed to make findings of fact to justify a distributive award. We disagree.
"[I]t shall be presumed in every action that an in-kind distribution of marital or divisible property is equitable." N.C.G.S. § 50-20(e). "This presumption may be rebutted by the greater weight of the evidence, or by evidence that the property is a closely held business entity or is otherwise not susceptible of division in-kind." Id. Therefore, "in equitable distribution cases, if the trial court determines that the presumption of an in-kind distribution has been rebutted, it must make findings of fact and conclusions of law in support of that determination." Urciolo v. Urciolo , 166 N.C.App. 504, 507, 601 S.E.2d 905, 908 (2004) (citing Heath v. Heath , 132 N.C.App. 36, 38, 509 S.E.2d 804, 805 (1999) ). "In order to rebut the presumption of an in-kind distribution, the equitable distribution judgment must contain a finding, supported by evidence in the record, that an in-kind distribution would be impractical ." Wirth v. Wirth , 193 N.C.App. 657, 669, 668 S.E.2d 603, 611 (2008) (emphasis added) (citations omitted).
In the instant case, the trial court concluded that "[i]n order to accomplish the equitable distribution Plaintiff/Wife is required to pay a distributive award of Eight Hundred Twenty Four Thousand Two Hundred Ninety Four Dollars and no/100 ($824,294)." This conclusion was preceded by extensive findings of fact regarding distributional factors required to be considered per N.C. Gen. Stat. § 50-20(c), which indicate and detail the reasoning behind the trial court's conclusion-albeit an inferred one-that an in-kind distribution would be "impractical":
*282 (1) The income, property, and liabilities of each party at the time the division of property is to become effective. Neither party is employed. Plaintiff/Wife receives social security, a pension, and she lives with her daughter (who could and should assist in the sharing of her living expenses). Defendant/Husband receives social security, a salary of $60,000 (as compensation for his service as Chairman of the Board), income from one trust, and one oil royalty. As a result of this equitable distribution Defendant/Husband will have more debt than property and Plaintiff/Wife will have to liquidate her property to pay the distributive award .
....
(3) The duration of the marriage and the age and physical and mental health of both parties. The parties were married for 15 years and were in their fifties when they married. Defendant/Husband is in his mid-seventies[,] has suffered a serious heart attack [,] and now suffers from Alzheimer's disease. He will not be in a condition to seek outside employment again in his life and the likelihood of his needing increased medical attention in the coming years is good. Plaintiff/Wife is in her mid-seventies and in good health. She is not working now but that is by choice. She is taking classes to become a Guardian Ad Litem.
....
(5) The expectation of pension, retirement, or other deferred compensation rights that are not marital property. Plaintiff/Wife has a small separate retirement plan. Defendant/Husband may receive distributions as a result of his shared ownership in a number of Companies.
....
(8) Any direct contribution to an increase in value of separate property which occurs during the course of the marriage. Defendant/Husband contributed time, money and resources to Plaintiff/Wife's separately owned real estate.
(9) The liquid or nonliquid character of all marital property and divisible property. Neither party has any liquid marital property left. Plaintiff/Wife spent her liquid assets on her attorney in this case .
*283 ....
(11) The tax consequences to each party, including those federal and State tax consequences that would have been incurred if the marital and divisible property had been *338 sold or liquidated on the date of valuation. The trial court may, however, in its discretion, consider whether or when such tax consequences are reasonably likely to occur in determining the equitable value deemed appropriate for this factor. Defendant/Husband is going to owe substantial taxes as a result of the stock he sold to pay down marital debt . Plaintiff/Wife paid taxes as a result of investment assets she liquidated after the date of separation.
(12) Any other factor which the court finds to be just and proper. There was no choice but to distribute all debts to Defendant/Husband in [t]his case which results in a heavy burden he may never be able to pay before his death and a distributive award owed by Plaintiff/Wife that she may never be able to pay before her death .
(Emphasis added).
While the trial court did not specifically make a finding which stated that an equitable distribution of the marital property in-kind would be impractical, see id. , the trial court's many findings of fact, especially those regarding the non-liquid character of the parties' assets, are sufficient to permit appropriate appellate review of this issue, see Plummer v. Plummer , 198 N.C.App. 538, 543, 680 S.E.2d 746, 750 (2009) ("[T]he degree of specificity required in a court order pertaining to equitable distribution cannot be established with scientific precision. However, the court's findings of fact must be 'sufficiently specific to allow appellate review.' " (alteration in original) (internal citation omitted) (quoting Rosario v. Rosario , 139 N.C.App. 258, 267, 533 S.E.2d 274, 279 (2000) ). Because the trial court's findings of fact are "sufficiently specific to allow appellate review," see Rosario , 139 N.C.App. at 267, 533 S.E.2d at 279 (citation omitted), we conclude that they support its distributive award, and the trial court did not abuse its discretion in ordering plaintiff to pay a distributive award of $824,294.00. Plaintiff's argument is overruled.
VI
Lastly, plaintiff argues the trial court erred in ordering the liquidation of separate property to satisfy the court's distributive award.
*284 Specifically, plaintiff argues the "trial court has no authority to distribute separate property[.]" As this is a mischaracterization of what the trial court did, we disagree.
Generally, "[f]ollowing classification, property classified as marital is distributed by the trial court, while separate property remains unaffected ." McLean v. McLean , 323 N.C. 543, 545, 374 S.E.2d 376, 378 (1988) (emphasis added) (citing Hagler v. Hagler , 319 N.C. 287, 289, 354 S.E.2d 228, 232 (1987) ). As stated in Section I, supra , in ordering the liquidation of plaintiff's separate property, it was not distributing that property, but rather "considering" it in making its other distributions, particularly the distribution of the majority of the marital debt to defendant and ordering plaintiff to pay a distributive award. See Young , 185 N.C.App. at 648, 649 S.E.2d at 474 (noting that the trial court is required to "consider the separate property in making a distribution of the marital property").
"The trial court is required to make findings as to whether the defendant has sufficient liquid assets from which he can make the distributive award payment." Urciolo , 166 N.C.App. at 507, 601 S.E.2d at 908 (citing Embler v. Embler , 159 N.C.App. 186, 188-89, 582 S.E.2d 628, 630 (2003) ). In the instant case the trial court did just that, and in concluding that plaintiff is "required to pay a distributive award of [$824,294.00]" to defendant, the trial court found as follows:
[Plaintiff] [does not have] the means and ability to pay this amount in full. The Court finds that she has the ability to pay the distributive award only as follows :
....
b) 14512 Myer's Mill & 14212 Stewart's Bend: Plaintiff/Wife shall be entitled to keep 14512 Myer's Mill so that she may continue to reside there. Plaintiff/Wife will sell 14212 Stewart's Bend and pay the net proceeds to Defendant/Husband.
c) 14228 Stewart's Bend: Plaintiff/Wife can obtain a deed to this house back from Mr. Kirby, sell the property and distribute the net proceeds to Defendant/Husband or she can have Mr. Kirby pay to Defendant/Husband $90,000 which represents *339 the majority of equity he gained during the fraudulent "gift/transfer" to him of this property.
(Emphasis added).
*285 Accordingly, where the trial court was properly considering-not distributing-plaintiff's separate property in distributing the marital estate, specifically considering plaintiff's ability to pay a distributive award to defendant, the trial court did not abuse its discretion in ordering plaintiff to liquidate separate property in order to pay the distributive award. Defendant's argument is overruled.
The equitable distribution judgment and order is
AFFIRMED IN PART; VACATED IN PART.
Judge ARROWOOD concurs.
Judge MURPHY concurs in part and dissents in part in a separate opinion.

Defendant owned "a total of 25 percent [of Inwood Properties] between a trust and individually[.]"

The ownership of both properties is disputed on appeal. The trial court found that plaintiff owned both properties as her separate property, but on appeal, plaintiff contends both properties were acquired at some point by CKE, plaintiff's corporation of which she is the sole owner/member.

The supplement to the record purports to show that on 25 September 2003, 14212 Stewart's Bend Lane was transferred from CKE to plaintiff for "zero amount," and on 12 November 2003, the property was granted from plaintiff back to CKE.

Plaintiff transferred 14228 Stewart's Bend Lane to Kirby on or about 30 May or 1 June 2015. The version of the Uniform Fraudulent Transfer Act which is currently in effect-the Uniform Voidable Transfer Act-did not become effective until 1 October 2015. See N.C. Sess. Laws 2015-23, § 1, eff. Oct. 1, 2015. Since then, N.C.G.S. §§ 39-23.1 et seq. have been amended again. See N.C. Sess. Laws 2017-204, § 3.3(a)-(b), eff. Aug. 3, 2017.

" 'Insider' includes: a. If the debtor is an individual, 1. A relative of the debtor ...." N.C.G.S. § 39-23.1(7) a. (emphasis added).

Plaintiff was represented from 2013 through June 2015. She paid her attorney $227,993.00 for his representation in this case, but her attorney withdrew in June 2015.