IN THE SUPREME COURT OF NORTH CAROLINA

No. 31A18

Filed 16 August 2019

ANDREA KIRBY CROWELL

v.

WILLIAM WORRELL CROWELL

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 809 S.E.2d 325 (N.C. Ct. App. 2019), affirming in part and vacating in part a judgment and order entered on 15 August 2016 by Judge Christy T. Mann in District Court, Mecklenburg County. On 20 September 2018, the Court allowed plaintiff's petition for discretionary review of additional issues. Heard in the Supreme Court on 14 May 2019 in session in the Pitt County Courthouse in the City of Greenville pursuant to section 18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

*Law Office of Thomas D. Bumgardner, PLLC, by Thomas D. Bumgardner, for plaintiff-appellant.*

*Hamilton Stephens Steele + Martin, PLLC, by Amy E. Simpson, for defendant-appellee.*

BEASLEY, Chief Justice

In this case, we consider whether the Court of Appeals erred by upholding the trial court's distributive award in an equitable distribution action which contemplates the use of a spouse's separate property. We hold that it did. Plaintiff

raised an additional issue for discretionary review pertaining to corporate standing under North Carolina's equitable distribution statute, which we granted. We conclude that discretionary review of this issue was improvidently allowed.

## I.    Factual and Procedural Background

Plaintiff Andrea Crowell and defendant William Crowell were married in 1998 and divorced in 2015. Plaintiff initiated this action by filing a complaint on 17 February 2014 in District Court, Mecklenburg County, seeking equitable distribution of the parties' marital property, alimony, and postseparation support. Defendant filed an answer and counterclaim for equitable distribution. Following a three-day hearing, on 15 August 2016, the trial court entered an equitable distribution order and an order denying plaintiff's request for an award of alimony, the latter of which was not appealed. The trial court's decision regarding equitable distribution is the only decision on appeal.

The trial court found that the parties married in July 1998, legally separated in September 2013, and divorced in April 2015. No children were born of their marriage. The court found that defendant started several small real estate and development companies before the parties were married which he claimed were his separate property on the date of separation, but plaintiff claimed that she had a marital interest in each of them. The trial court found that after their marriage, the parties maintained a lavish lifestyle and lived significantly beyond their means. To

fund their lifestyle, defendant sold his separate real and personal property and procured loans from the companies he owned.

When defendant began suffering from memory loss and dementia in 2011, his daughter from a previous marriage, Elizabeth Temple, was named president of the companies. Temple reviewed the company books and determined that both parties were borrowing money from the companies to the detriment of the companies and the other shareholders. Moreover, the companies were paying defendant inordinately high salaries and distributions. The court found that the loans "were made during the parties' marriage and most of the loaned money can be traced through deposits directly into the parties' personal joint bank account, to pay off personal credit cards, to purchase real estate in their personal name[s], and to [pay] expenses that had to be theirs personally." Although plaintiff claimed at trial that she had no knowledge of these loans, the court found her testimony not credible.

On the date of separation, the parties had incurred a significant amount of marital debt, which the trial court's findings detailed. This included debts to a majority of the companies in which defendant held an ownership interest. The marital home, the primary marital asset, was sold after the date of separation for $1,075,000, the net proceeds of which were $230,657. Of that amount, $144,794 was distributed to plaintiff and $85,863 was distributed to defendant. The trial court found that plaintiff possessed two pieces of separate property at the time of

separation—14212 Stewart's Bend Lane and 14228 Stewart's Bend Lane, in Charlotte, North Carolina (hereinafter, the "Stewart's Bend Properties"). The court noted that the parties also had stipulated to this effect in the final pretrial order.

The record indicates and the parties do not dispute that both of the Stewart's Bend Properties were acquired in the early 2000s by CKE Properties, LLC ("CKE").[1] According to the final pretrial order, plaintiff is "100% Owner" of CKE" and "the [o]nly purpose of the company is to own the real estate she purchased through a 1031 exchange using her separate funds." At issue in this appeal is the trial court's disposition of these two pieces of plaintiff's property.

14212 Stewart's Bend Lane

Plaintiff obtained two loans applicable to the 14212 Stewart's Bend Lane property. Although these loans were in plaintiff's name only, the trial court concluded that they were marital debts because the loans were obtained during the marriage and the proceeds were used for a marital purpose. The court distributed the debts, along with this parcel of separate real property to plaintiff; however, the court gave defendant credit for payments he made towards these loans between the dates of separation and divorce.

---

[1] The final pretrial order states that CKE purchased both properties in 2002. The Rule 9(d) supplement to the record contains warranty deeds and property appraisals purporting to show that these properties were acquired in 2003.

14228 Stewart's Bend Lane

As to the 14228 Stewart's Bend property, the trial court found that defendant obtained a loan secured by the property during the marriage but the proceeds were used for a marital purpose. The court distributed this marital debt to plaintiff, along with the underlying separate real property. Defendant made payments towards the loan between the dates of separation and divorce, and the court gave him credit for those payments.

The trial court noted that before the date of divorce in 2015, husband asked plaintiff to sell the house and lot at this address to eliminate the marital debt and divide the proceeds between them, but plaintiff refused to do so. Shortly after that, plaintiff "gifted" the home to her son Gentry Kirby.[2] The court found that at the time of this gift, the property was worth $390,000, "resulting in a $100,000 'gift' of equity to Mr. Kirby." The court found the transfer to be fraudulent as intended to deceive creditors and that Kirby was not a good faith purchaser. Therefore, the court found that the home and/or equity in the property may be considered when "determining the equitable distribution of the property and/or the distributive award that Plaintiff/Wife may be required to pay." The court further found that "Mr. Kirby does not need to be a party to this lawsuit in order for the Court to consider this property and the disposition thereof as part of this litigation."

---

[2] Plaintiff transferred 14228 Stewart's Bend Lane to Kirby on or about 29 May 2015.

Distributive Award

Ultimately, the trial court determined that the property should be divided equally, and that, to accomplish this result, plaintiff must pay defendant a distributive award of $824,294. The court noted that both parties are in their mid-seventies, that neither party was employed at the time, that defendant would not be able to obtain employment because of his physical condition, and that "[n]either party has any liquid marital property left." The court further found that due to a number of factors, "[t]here was no choice but to distribute all the debts to Defendant/Husband . . . which results in a heavy burden he may never be able to pay before his death and a distributive award owed by Plaintiff/Wife that she may never be able to pay before her death."

Noting that plaintiff lacks the means and ability to pay the $824,294 distributive award in full, the trial court stated in pertinent part:

> 198. . . . The Court finds [plaintiff] has the ability to pay the distributive award only as follows:
>
> . . . .
>
> **b) 145 Myer's Mill & 14212 Stewart's Bend:** Plaintiff/Wife shall be entitled to keep 14512 Myer's Mill so that she may continue to reside there. Plaintiff/Wife will sell 14212 Stewart's Bend and pay the net proceeds to Defendant/Husband.

   **c) 14228 Stewart's Bend:** Plaintiff/Wife can obtain a deed to this house back from Mr. Kirby, sell the property and distribute the net proceeds to Defendant/Husband or she can have Mr. Kirby pay to Defendant/Husband $90,000 which represents the majority of equity he gained during the fraudulent "gift/transfer" to him of this property.

In the distributive portion of the order, the trial court ordered plaintiff to do as follows:

   **b) . . . 14212 Stewart's Bend:** Within thirty (30) days of the date of the execution of this Judgment/Order Plaintiff/Wife shall sign a listing agreement with a realtor selected by Defendant/Husband and will take all efforts to sell 14212 Stewart's Bend for fair market value. Plaintiff/Wife will cooperate with price reductions and repair requests recommended by the real estate agent and will accept any unconditional offer made within 2% of the then asking price. All of the net proceeds shall be paid to Defendant/Husband.

   **c) 14228 Stewart's Bend:** Within sixty (60) days of the date of the execution of this Judgment/Order Plaintiff/Wife shall sign a listing agreement with a realtor selected by Defendant/Husband and will take all efforts to sell this home for fair market value; OR Mr. Kirby will pay to Defendant/Husband $90,000 which represents the majority of the equity he gained during the fraudulent "gift/transfer" to him of this property.

Plaintiff appealed.

In a partially divided decision filed on 2 January 2018, the Court of Appeals affirmed in part and vacated in part the trial court's equitable distribution judgment and order. *Crowell*, 809 S.E.2d 325. In relevant part, the majority upheld the portion

of the order directing plaintiff to sell the Stewart's Bend Properties.  *Id.* at 331, 339. It determined that

> where the trial court was properly considering—not distributing—plaintiff's separate property in distributing the marital estate, specifically considering plaintiff's ability to pay a distributive award to defendant, the trial court did not abuse its discretion in ordering plaintiff to liquidate separate property in order to pay the distributive award.

*Id.* at 339.  On this basis, the majority also concluded that neither CKE nor Kirby was a necessary party to the action in order for the trial court to order plaintiff to take action affecting title to the Stewart's Bend Properties, notwithstanding any respective ownership interests in those properties they may possess.  *Id.* at 333–334. As to the alternate $90,000 amount that Kirby was ordered, in the alternative, to pay, the panel unanimously concluded that the trial court lacked jurisdiction to require Kirby to pay funds to defendant where he was not a party to the action, and struck that portion of the order.  *Id.* at 334.

In a separate opinion concurring in part and dissenting in part, Judge Murphy dissented from the majority's determinations that CKE was not a necessary party and that Kirby was not a necessary party except as to the alternative money judgment against him.  *Id.* at 339 (Murphy, J., concurring in part and dissenting in part).  The dissent disagreed with the majority's determination that "the trial court . . . merely considered the separate [Stewart's Bend Properties] in distributing

the marital estate." *Id.* at 340. Rather, the dissent concluded that "[i]nstead of considering the separate property, the trial court improperly restricted the abilities and rights of CKE," which "must list the property at 14212 Stewart's Bend and pay proceeds to [d]efendant," and "Kirby, [who] must transfer title of 14228 Stewart's Bend to [p]laintiff" to be sold. *Id.* Thus, as the dissenting judge reasoned, the trial court improperly "entered an equitable distribution judgment and order affecting the rights and interests of parties not joined in the action." *Id.*[3] In sum, the dissent concluded that "CKE and Kirby are necessary parties to this action, and the trial court lacked the power to require their action or affect their rights without first being joined as parties." *Id.*

Plaintiff appealed as of right based upon the dissenting opinion. She also sought discretionary review of additional issues, which this Court granted in part on 20 September 2018.

## II.   Discussion

Plaintiff contends that the Court of Appeals erred by sanctioning the trial court's distribution of her separate property contrary to North Carolina law. This is

---

[3] The dissent opined that, in addition, the trial court's order prevents these non-parties from raising defenses and protections under the Uniform Fraudulent Transfer Act or exercising their constitutional rights to a jury trial. *Crowell*, 809 S.E.2d 340. As we resolve this case upon other grounds, we need not reach this additional basis for the dissenting opinion.

a question of statutory interpretation, and where questions of statutory interpretation exist, this Court reviews them de novo. *In re Foreclosure of Vogler Realty, Inc.*, 365 N.C. 389, 392, 722 S.E.2d 459, 462 (2012). We agree with plaintiff.

In equitable distribution actions, Section 50-20 of the North Carolina General Statutes authorizes trial courts to distribute marital and divisible property between divorcing parties. *See* N.C.G.S. § 50-20(a) (2017) ("Upon application of a party, the court shall determine what is the marital property and divisible property and shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this section."). "Marital property" is "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of separation of the parties, and presently owned." N.C.G.S. § 50-20(b). "Separate Property" constitutes "all real and personal property acquired by a spouse before marriage." *Id.*

"Following classification, property classified as marital is distributed by the trial court, while separate property remains unaffected." *McLean v. McLean*, 323 N.C. 543, 545, 374 S.E.2d. 376, 378 (1988) (citing *Hagler v. Hagler*, 319 N.C. 287, 289, 354 S.E.2d 228, 232 (1987)). "Pursuant to the Equitable Distribution Act, the trial court is only permitted to distribute marital and divisible property." *Mugno v. Mugno*, 205 N.C. App. 273, 277, 695 S.E.2d. 495, 498 (2010) citing N.C.G.S. § 50-20(a); *Hagler*, 319 N.C. at 289, 354 S.E.2d. 232. Separate property may not be

distributed. *See Clark v. Dyer*, 236 N.C. App. 9, 21, 762 S.E.2d 838, 844 (2014) (observing that the trial court correctly declined to distribute real property it considered to be separate property "since the trial court cannot distribute separate property."). Here, the trial court found, and the parties stipulated, that both the Stewart's Bend Properties were plaintiff's separate property.

The issue is whether the trial court distributed separate property for purposes of Section 50-20 when it ordered plaintiff to liquidate her separate property to pay a distributive award. We hold that it did. We further conclude that there is no distinction to be made between "considering" and "distributing" a party's separate property in making a distribution of marital property or debt where the effect of the resulting order is to divest a party of property rights she acquired before marriage.

As an initial matter, the idea that the trial court may "consider" a spouse's separate property in making a distribution of the marital property appears to have originated in *Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990). There, the Court of Appeals held that a spouse who failed to support his claim that certain debt was marital did not meet his burden to "present evidence from which the trial court can classify, value and distribute the property" because

> [t]he requirements that the trial court (1) classify and value all property of the parties, both separate and marital, (2) *consider the separate property in making a distribution of the marital property*, and (3) distribute the marital property, necessarily exist only when evidence is presented

to the trial court which supports the claimed classification,
valuation and distribution.

*Id.* at 80, 387 S.E.2d at 184 (emphasis added). While this language has been

frequently quoted by the Court of Appeals, until the present case, it has been in the

context of the type of issue presented in *Miller*—a failure of one party to present

evidence of the proper classification of property as marital, divisible, or separate.[4]

*See, e.g., Cushman v. Cushman*, 244 N.C. App. 555, 566, 781 S.E.2d 499, 506 (2016);

*Young v. Gum*, 185 N.C. App. 642, 649 S.E.2d 469 (2007).

N.C.G.S. § 50-20 provides that the trial court making an equitable distribution

will consider separate property in one context only: the trial court must consider

"[a]ny direct contribution to an increase in value of separate property which occurs

during the course of the marriage." N.C.G.S. § 50-20(c)(8). Thus, a party who, during

the marriage, causes an increase in value in her spouse's separate property can

receive some credit for that increase in value during the equitable distribution

proceeding. *See Turner v. Turner*, 64 N.C. App. 342, 346, 307 S.E.2d 407, 409 (1983)

("If . . . an equity in [separate] property developed during the marriage because of

improvements or payments contributed to by defendant, that equity (as distinguished

---

[4] Taken in context, the reference to "consideration" of separate property contained in *Miller* is clearly intended to recognize a trial judge's undoubted authority to consider the amount of separate property held by each party in determining the amount of marital property and debt that should be distributed to each party at the conclusion of the equitable distribution process.

from a mere increase in value of separate property, excluded by the statute) could be marital property, in our opinion, upon appropriate, supportable findings being made. *And if not marital property, such equity, if it developed, would be a factor requiring consideration by the court, along with the other factors specified in the statute, before determining how much of the marital property each party is entitled to receive.*" (emphasis added)).

Here, the trial court's "consideration" of plaintiff's separate property did not occur in the context of whether defendant contributed to an increase in the property's value or determining the amount of marital property and debt that should be distributed to each party. Instead, the trial court ordered plaintiff to *use* specific items of separate property to satisfy marital debt, immediately affecting her rights in that property. As a result, to ascertain the legality of this order, we must further determine whether a court's distributive award may reach separate property in this way.

To resolve the issue, we consider the plain language of the equitable distribution statute and, to the extent there is any ambiguity, its apparent purpose. *Diaz v. Div. of Soc. Servs. & Div. of Med. Assistance, N.C. Dep't of Health & Human Servs.*, 360 N.C. 384, 386–87, 628 S.E.2d 1, 3 (2006). Section 50-20(a) states that the trial court "shall provide for an equitable distribution of the marital property and divisible property between the parties in accordance with the provisions of this

section." Regarding distributive awards, subsection (e) of the statute provides that,

where the presumption in favor of in-kind distribution is rebutted,

> the court in lieu of in-kind distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital or divisible property. The court may provide that any distributive award payable over a period of time be secured by a lien on specific property.

N.C.G.S. § 50-20(e). While we note that the text of this subsection does not exclude

the requiring the use of separate property to satisfy a distributive award, it does not

explicitly allow such a use either. However, an intent to avoid directly affecting a

party's rights in separate property can be inferred from the text of section 50-20,

which provides only for "distribution of the *marital property and divisible property*

between the parties." N.C.G.S. § 50-20(a) (emphasis added). Our courts cannot

"delete words used" or "insert words not used" in a statute. *Lunsford v. Mills*, 367

N.C. 618, 623, 766 S.E.2d 297, 301 (2014). In light of the fact that the rest of the

equitable distribution statute allows for the distribution of only marital and divisible

property, it is inconsistent to read into this subsection the authority for the trial court

to order the use of separate property to satisfy a distributive award, and we decline

to do so today.

As this Court has long observed, only marital property is to be distributed and

separate property is to "remain[ ] *unaffected.*" *McLean*, 323 N.C. at 545, 374 S.E.2d.

at 378 (emphasis added). Therefore, we conclude that trial courts are not permitted to disturb rights in separate property in making equitable distribution award orders. Here, the trial court ordered plaintiff to liquidate the Stewart's Bend Properties "to pay down the distributive award." Because this component of the trial court's order unquestionably disturbed plaintiff's rights in her separate property, the trial court's actions amounted to an impermissible distribution of that property. The Court of Appeals' determination to the contrary is overruled.

We acknowledge that where a marriage is in debt, it is difficult to envision a scenario in which the making of a distributive award will not affect a party's separate property in some manner. Nevertheless, within the confines of N.C.G.S. § 50-20, the trial court in this case was only permitted to use that debt in calculating the amount of the distributive award, not to dictate how the debt was to be paid.[5] Accordingly, we reverse the Court of Appeals' holding that the trial court did not err by issuing a distributive award ordering plaintiff to liquidate the Stewart's Bend Properties, and we remand for further proceedings.

Plaintiff further argues, based upon the Court of Appeals' dissenting opinion, that the trial court could not exercise jurisdiction over CKE and Kirby when they

---

[5] This is not intended to modify or limit the ordinary civil contempt power of the trial court pursuant to N.C.G.S. § 5A-21 should plaintiff fail to comply with the distribution order. Under that authority, all of plaintiff's assets may be taken into account when assessing her ability to comply with the order.

were not joined as parties in the equitable distribution action. The parties stipulated and the trial court found that the Stewart's Bend Properties were plaintiff's separate property on the date of separation. In light of our holding that the trial court lacked statutory authority to order disposition of plaintiff's separate property, it is not necessary to reach this issue.

In sum, we hold: (1) the Court of Appeals erred in upholding the trial court's order directing plaintiff to liquidate her separate property to pay down the distributive award because it effectively distributed her separate property and (2) discretionary review of whether N.C.G.S. § 50-20 grants corporations standing to seek reimbursement for debts was improvidently allowed.

Accordingly, we reverse the holding of the Court of Appeals and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED IN PART; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.